The STATE of Ohio, Appellee,

v.

PERKINS, Appellant.

[Cite as *State v. Perkins*, 191 Ohio App.3d 263, 2010-Ohio-5161.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2009 CA 41.

Decided Oct. 22, 2010.

264

Anthony E. Kendell, for appellee.

Bryan K. Penick, for appellant.

DONOVAN, Presiding Judge.

{¶ 1} This matter is before the court on the notice of appeal of Robert H. Perkins, filed October 21, 2009. On October 22, 2008, Perkins was indicted on one count of aggravated assault, in violation of R.C. 2903.12(A)(2), a felony of the fourth degree. Perkins pleaded not guilty, and he filed a motion to suppress, which was granted in part after a hearing. On April 17, 2009, the state dismissed the aggravated-assault charge without prejudice.

{¶ 2} On April 22, 2009, Perkins was reindicted on one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree. Perkins pleaded not guilty, and on May 22, 2009, he filed a "Motion to Dismiss; Motion for Grand Jury Transcripts." According to Perkins, he "is the victim of vindictive prosecution." Perkins argued that on "the Monday preceding the Thursday trial, the State informed [him] that if he did not plead guilty to the charge of aggravated assault then the State would seek an indictment against [him] for felonious assault. * * * Maintaining his innocence, [Perkins] declined to accept the State's offer and plead as charged to aggravated assault." Perkins asserted that on the eve of trial, the prosecutor learned that the alleged victim, Michael Mullins, was in Florida, and "the only reason to dismiss the original case and pursue the felonious assault case was to either force [Perkins] to plead guilty, or to give the State an opportunity to secure [Mullin's] presence at the trial."

{¶ 3} Regarding his request for grand-jury transcripts, Perkins asserted that the "first proceeding obviously established the fact that [Mullins] seriously provoked [Perkins] into causing physical harm to [Mullins] by means of a deadly weapon, which is why he was indicted for aggravated assault. On the contrary, the second proceeding did not establish that [Mullins] seriously provoked [Perkins]. The testimony provided at the first hearing is thus exculpatory to [Perkins's] present case."

{¶ 4} At the hearing on the defense motion for dismissal of the felonious-assault indictment, the prosecutor stated the following:

{¶ 5} "Early in my conversations with counsel in this case after I evaluated it and I was preparing for trial, I told him early on that this was more consistent with a Felonious Assault based upon my investigation and my trial prep. And I allowed the thing to go on because they were trying to negotiate a plea with respect to the Aggravated Assault, and that's why that went on.

{¶ 6} "I simply investigated the case, felt it was consistent with a Felonious Assault and I represented it on that basis. There was never going to be a trial on Aggravated Assault. As we progressed towards trial that was made known to everyone. But I let it pend because I thought, and there was hope that there was gonna be a plea.

{¶ 7} "There's no inconsistent statements and if there were I would have reported them to Counsel as is my duty. I would encourage the Court to look at the transcripts just as they would with respect to any kind of a claim to a prior inconsistent statement and decide for itself whether or not there is in fact any such inconsistent statement and I am confident the Court will find that there is not."

{¶ 8} We note that defense counsel did not dispute the prosecutor's representation that he had communicated early in negotiations to defense counsel the fact that his initial evaluation revealed that the facts supported a charge of felonious assault. Nor did Perkins offer evidence of any kind that Mullins was out of state, and the record does not establish Mullins's unavailability. Further, the record is devoid of any evidence that the state was unable to proceed as scheduled on April 16, 2009.

{¶ 9} On July 23, 2009, the trial court overruled Perkins's motions. In its decision, the trial court noted that it had reviewed the transcripts of the grand-jury testimony as requested by Perkins and found no grounds to dismiss the indictment or release the transcripts to Perkins. It ordered that the transcripts be preserved under seal.

{¶ 10} On August 12, 2009, Perkins filed a motion in limine, asking the trial court to prohibit the state from introducing evidence "concerning events occurring after the fight constituting the alleged felonious assault." The trial court overruled the motion.

{¶ 11} At trial, Perkins asserted the defense of self-defense, and the jury was instructed on felonious assault, aggravated assault, and assault. Following a jury trial, Perkins was found guilty of felonious assault. He was sentenced to a term of eight years in prison.

{¶ 12} The events giving rise to this matter began on September 17, 2008. Mullins, a concrete contractor, had been hired by Don and Diana Ochs, and Diana's son, Jeff Hahn, to pour concrete on their property in Tipp City, including a floor for their barn. Three of Mullins's employees were on the job site that day, namely, Perkins, Clayton Bowling, and Jesse Fugate. Perkins served as the foreman of the crew. Mullins was present at the job site in the morning for an hour, and then he left while the crew began the job. Mullins returned later when the work for the day was 80 percent complete, and he observed that Perkins had not created enough "fall" in the concrete floor as instructed. Due to this mistake, the floor was level, which would allow water to accumulate. According to Mullins, the men needed to make repairs immediately before the concrete hardened.

{¶ 13} According to Mullins's trial testimony, upon being instructed to begin the repairs, Perkins responded, " 'You know what, man, just fuck it.' " He then "gets up off his knee boards and walks off the slab just leaving his boot prints right in the concrete. Just left his tools lay inside on the floor." Perkins and Mullins then approached each other, Perkins grabbed Mullins's face, and the two men went to the ground. The testimony revealed that they soon released each other and then grabbed each other again and went to the ground, "wrestling," at least three times. Perkins then grabbed a handful of metal stakes and threw

them into the concrete while walking through it, saying, "You thought it was fucked up before, I'm fuckin' it up." Mullins told Perkins to leave the area, and Perkins, who still had a stake in his hand, hit Mullins in the back of his head with the stake. Mullins "blacked out." Perkins then hit Mullins·in his right arm and repeatedly in his back.

{¶ 14} The trial testimony established that Fugate tackled Perkins to end the assault, and he told Perkins to leave the area. As Perkins was leaving, he picked up a two-by-four and began swinging it at Fugate. Fugate retreated to the area where Bowling and Hahn were standing. A call was made to 9–1–1 by Don Ochs as well as Mullins.

{¶ 15} Deputy Sheriff Robert Morando Jr., of the Miami County Sheriff's Office, responded to the scene, arriving within five minutes of the initial dispatch. Morando testified that "as I was coming up the first thing that I noticed was the Defendant walking shirtless along the sidewalk heading in a Northerly direction. I did see a board in his hand." Morando stopped and instructed Perkins to drop the board. He then placed him in handcuffs. After interviewing the witnesses, Morando advised Perkins that he was "under arrest for felonious assault."

{¶ 16} The testimony of Hahn, the Ochses, and Fugate, all of whom witnessed the assault, was consistent with Mullins's testimony, and all of the witnesses identified Perkins as the aggressor. Evidence established that the testimony of these witnesses was consistent with the initial statements given by them to law enforcement.

{¶ 17} Perkins testified on his own behalf, asserting that Mullins did not provide him with the proper tools to complete the job and that Mullins became aggressive when he returned to the job site because he was dissatisfied with the work performed by Perkins.

{¶ 18} Perkins asserts three assigned errors. His first assigned error is as follows:

{¶ 19} "The trial court abused its discretion in overruling Perkins' motion to dismiss the charge of felonious assault because Perkins established an unrebutted presumption of vindictive prosecution."

{¶ 20} R.C. 2903.12(A)(2) proscribes aggravated assault and provides, "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

{¶ 21} " * * *

{¶ 22} "(2) Cause serious physical harm to another or to another's unborn."

{¶ 23} R.C. 2903.11(A)(2) proscribes felonious assault and provides, "No person shall knowingly do either of the following:

{¶ 24} " * * *

{¶ 25} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 26} In his brief, Perkins relies primarily upon *State v. Garrison* (Oct. 9, 1998), Greene App. Nos. 98–CA–28 and 97–CA–118, 1998 WL 698364. In consolidated appeals, Garrison argued in part that the trial court erred in granting the state's motion for summary judgment and in denying his petition for postconviction relief without a hearing. According to Garrison, he was entitled to relief because he was the victim of vindictive prosecution "when he stood upon his right to maintain his plea of not guilty to the original two charges of Complicity to Commit Theft, [and] the prosecutor vindictively resubmitted this case to the grand jury, and obtained an indictment upon two counts of Robbery and two counts of Abduction." Garrison was sentenced to maximum sentences of eight to 15 years on each of the robbery counts, and from five to ten years on each of the abduction counts, and the trial court ordered that the sentences be served consecutively. We noted that it appeared that "the prosecutor said nothing to Garrison, during the course of plea negotiations, concerning the possibility of charging him with greater offenses. In this situation, a reasonable inference might be that the decision to seek greater charges was a vindictive reaction to Garrison's refusal to plead guilty to the charges originally pending."

{¶ 27} We further noted, when viewing the evidence in a light most favorable to Garrison, that "reasonable minds could reach different conclusions as to whether he was the subject of prosecutorial vindictiveness. In this regard, the trial court may have contributed to the impression that Garrison was being punished for his decision to exercise his constitutional right to stand trial, and put the state to its proof, when the trial court imposed maximum, consecutive sentences following Garrison's reindictment and conviction. Had Garrison plead [sic] guilty as originally charged, he would have been exposed to two sentences with maximum terms of five years, and minimum terms of one and a half, two, two and a half, or three years, and even if the sentences were ordered to be served consecutively, he would have been exposed to minimum and maximum terms totalling not more than twenty percent of the sentence that he ultimately received." We reversed and remanded the matter.

{¶ 28} In *Garrison*, we distinguished it from *State v. Myrick* (Feb. 13, 1998), Greene App. No. 96–CA–149, 1998 WL 57794. "In that case, the prosecutor placed before the defendant, during plea negotiations, the prospect that the State might seek to charge him with a greater offense. The defendant then made an informed decision to plead guilty to the lesser charge that had already been

instituted. Where there is substantial evidentiary support for the greater charge, we see no inference of prosecutorial vindictiveness arising from that factual circumstance." *Garrison.*

{¶ 29} In *Myrick,* the defendant was charged with three counts of aggravated trafficking, and during the course of plea negotiations, the state offered to let him plead guilty as charged but indicated that if he refused to do so, the state would seek a new indictment adding a specification that the offenses occurred within 1,000 feet of school premises. Myrick refused the offer, and the jury returned findings of guilt on the lesser charges. Myrick argued that it was prosecutorial misconduct to threaten him in the course of plea negotiations. We concluded that "it is not prosecutorial misconduct to threaten a defendant, in order to induce him to plead guilty to the offenses with which he has been charged, with the institution of more serious charges for which the State has substantial evidence." We noted as follows:

{¶ 30} "We cannot distinguish the State's conduct in threatening to charge a greater offense, for which it had substantial evidentiary support, from charging that greater offense initially and then offering to reduce it. In fact, if we were to hold that a prosecutor must first formally institute the strongest possible charges for which it has evidence, before it may offer to allow a defendant to plead guilty to lesser charges, that might unduly and unnecessarily complicate the plea bargaining process. We can understand that the prosecutor might find it more difficult, politically, to reduce * * * a charge that has already been instituted in exchange for a plea to a lesser charge, rather than to accept a plea to a lesser charge before the greater charge has been formally instituted.

{¶ 31} "As long as a prosecutor has a good-faith basis for charging a greater offense, we see no reason to preclude the prosecutor from offering to forego the greater charge in exchange for a plea to a lesser charge, even if the lesser charge is the only charge formally pending." We affirmed the judgment of the trial court.

{¶ 32} We further take note of *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, in which the defendant, who had previously been convicted of two felonies, was charged with uttering a forged instrument, and the prosecutor fulfilled a threat, made during plea negotiations, to reindict the defendant under the Habitual Criminal Act if he did not plead guilty to the uttering charge. It was "not disputed that the recidivist charge was fully justified by the evidence, that the prosecutor was in possession of this evidence at the time of the original indictment, and that Hayes' refusal to plead guilty to the original charge was what led to his indictment under the habitual criminal statute." Id. at 359. The Supreme Court "has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargain-

ing table is to persuade the defendant to forgo his right to plead not guilty. * * * In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Id. at 364. The Supreme Court found that the prosecutor's conduct, "which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." Id. at 365.

{¶ 33} As noted in *United States v. Goodwin* (1982), 457 U.S. 368, 381–382, 102 S.Ct. 2485, 73 L.Ed.2d 74, "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

{¶ 34} "In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. * * *

{¶ 35} " * * * A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution."

{¶ 36} We disagree with Perkins's assertion that the matter herein is analogous to *United States v. Andrews* (C.A.6, 1980), 633 F.2d 449. In *Andrews*, three defendants were indicted for narcotics and firearm offenses. Two of them sought bail, which the government opposed. The third defendant turned state's evidence and was threatened. The government placed her in the federal witness-protec-

tion program. Based upon the testimony of the Assistant United States Attorney regarding the threats directed at the third defendant, the magistrate denied bail. The defendants appealed the magistrate's decision to the district court, which overturned the magistrate and released the defendants on bond. Two days later, the Assistant United States Attorney obtained a superseding indictment charging the defendants with an additional count of conspiracy. The defendants moved to dismiss the superseding indictment, and the district court granted the motion. The government appealed, and a divided panel of the Sixth Circuit reversed the district court and then conducted a rehearing en banc. The court reversed and remanded the matter, noting that the "district court applied a near per se appearance of vindictiveness standard, i.e., where the prosecutor adds charges after the defendant's exercise of a procedural right, there arises an appearance of vindictiveness which the government has the 'heavy burden' to rebut. We think that this standard is too harsh and operates to unduly limit the prosecutorial discretion. The proper standard, in the opinion of the en banc court is not whether there is an appearance of vindictiveness, but whether there exists a 'realistic likelihood of vindictiveness.' Only then should the government be required to assume the burden of rebutting with objective facts." (Citation omitted.) Id. at 457.

{¶ 37} According to Perkins, "like the government in *Andrews* sought to protect its witnesses in order to be able to present the best evidence at trial, the State here sought to protect its case and its ability to present its best evidence against Perkins by dismissing the charges of Aggravated Assault due to the unavailability of its complaining witnesses."

{¶ 38} However, the record here does not establish that the state was motivated by Mullins's unavailability for the April 16, 2009 trial but rather reveals an honest and thorough assessment of the facts. Furthermore, the record does not establish that Mullins was out of the state on April 16, 2010.

{¶ 39} We find this matter to be distinct from *Andrews* and analogous instead to *Bordenkircher*, where "an independent factor—the defendant's ability to choose—eliminated any due process problems." *Andrews*, 633 F.2d at 457. Like Bordenkircher (and Myrick), Perkins was given the choice to plead guilty to aggravated assault or be reindicted on the more serious charge. *Andrews*, in contrast, did not arise in the context of plea negotiations.

{¶ 40} Further, Perkins is protected against prosecutorial vindictiveness by means of the grand-jury system. "The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." (Citation omitted.) *United States v. Calandra* (1974), 414 U.S. 338, 343, 94 S.Ct. 613, 38

L.Ed.2d 561.  The prosecutor herein explained on the record his reasons for allowing the aggravated-assault charge to remain pending leading up to trial, namely that he told Perkins early on that the offense at issue was more "consistent" with a felonious assault and that he hoped that Perkins would plead guilty to the lesser charge.  Since there is substantial and consistent evidentiary support for the charge of felonious assault, and since Perkins made the informed choice to plead not guilty to aggravated assault, he was not subject to unfounded and/or vindictive prosecution, and we see no due-process violation.  As an aside, we note that the petit jury was instructed on aggravated assault and rejected it. Perkins's first assigned error is overruled.

{¶ 41} Perkins's second assigned error is as follows:

{¶ 42} "The trial court abused its discretion and prejudicially erred in overruling Perkins' motion to use grand jury transcripts at trial without permitting Perkins' counsel to inspect the grand jury transcripts during the court's *in camera* inspection."

{¶ 43} Perkins speculates that Mullins's testimony in the second grand-jury proceeding was inconsistent with his "exculpatory" testimony in the first grand-jury proceeding, resulting in Perkins's reindictment for felonious assault, and that he was entitled to view the transcripts.

{¶ 44} Crim.R. 6(E) provides, "A grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

{¶ 45} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Greer* (1981), 66 Ohio St.2d 139, 20 O.O.3d 157, 420 N.E.2d 982, paragraph two of the syllabus.  A particularized need exists where "it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." Id. at paragraph three of the syllabus.  Whether a particularized need for disclosure exists is a question of fact to be determined by the trial judge, and the decision is within the sound discretion of the trial court.  Id. at paragraph one and two of the syllabus.  A decision denying a motion for release of the transcript

will not be reversed absent an abuse of discretion. *State v. Coley* (2001), 93 Ohio St.3d 253, 261, 754 N.E.2d 1129.

{¶ 46} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 47} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Ents., Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 48} "The Ohio Supreme Court has held that there was no 'particularized need' established in cases where there were allegations that (1) the charges were 'elevated,' *State v. Benge* (1996), 75 Ohio St.3d 136, 145 [661 N.E.2d 1019]; (2) the indictment was issued on inadequate evidence, [*State v. ] Brown* (1988) [38 Ohio St.3d 305] at 308 [528 N.E.2d 523]; or (3) the indictment was based on 'illegal and incompetent evidence,' *State v. Davis* (1988), 38 Ohio St.3d 361, 365 [528 N.E.2d 925]. See, also, *Coley,* [93 Ohio St.3d] at 262 [754 N.E.2d 1129]; and *State v. Stojetz* (1999), 84 Ohio St.3d 452, 459–460 [705 N.E.2d 329]. In fact, 'an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.' *United States v. Calandra* (1974), 414 U.S. 338, 345 [94 S.Ct. 613, 38 L.Ed.2d 561]. Consequently, 'a challenge to the grand jury's finding of probable cause does not demonstrate a particularized need for disclosure of the testimony.' *State v. Blalock,* 8th Dist. Nos. 80419 and 80420, 2002-Ohio-4580 [2002 WL 2027520], at ¶ 24." *State v. Herrera,* Ottawa App. No. OT–05–039, 2006-Ohio-3053, 2006 WL 1661794, ¶ 28.

{¶ 49} We note that Perkins's reliance upon *State v. Godfrey,* 181 Ohio App.3d 75, 2009-Ohio-547, 907 N.E.2d 1230, for the proposition that the trial court was required to "permit counsel for defendant to examine the transcripts to determine whether any inconsistencies or exculpatory material information exists in the transcripts," is misplaced. The trial court's decision granting Godfrey's motion for a transcript of the grand-jury proceedings was reversed upon the state's appeal. Godfrey believed that the complaining witness, in her grand-jury testimony under oath, recanted the statement she had made to the police regarding an altercation with Godfrey that caused the death of her fetus, and he also believed that there was "other exculpatory evidence given to the Grand Jury that was not provided" to him. Id. at ¶ 14. The Third District determined that a particularized need cannot be established on the basis of speculative pretrial

allegations of potentially inconsistent testimony. Id. at ¶ 15. The Third District noted that the Ohio Supreme Court has held that the determination of prejudice can be made only after the witness testified at trial, and, generally, cannot be used by an accused for ascertaining the evidence of the prosecution for the purpose of trial preparation. *State v. Laskey* (1970), 21 Ohio St.2d 187, 191, 50 O.O.2d 432, 257 N.E.2d 65, vacated in part on other grounds (1972), 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753. Id. It was significant to the Third District that once the particularized need for the grand-jury material is shown, the necessity of preserving grand-jury secrecy is lessened, largely because the witness, *in testifying at trial,* has given up any anonymity he might have had and has made public the events which are the subject of the grand-jury testimony being sought. *Godfrey* at ¶ 19. The Third District determined that "the trial court erred in ordering the immediate release of [the victim's] grand jury testimony directly to Godfrey, based solely upon defense counsel's representations that the testimony may be inconsistent with a prior undisclosed statement of the witness or that the testimony may be inconsistent with the testimony of the witness at an upcoming trial." Id. at ¶ 20. We note that in the instant case, Perkins did not renew his request for the transcripts after Mullins testified. Furthermore, the trial court never ruled that Perkins had demonstrated a "particularized need."

{¶ 50} The record before us reveals no abuse of discretion in the trial court's denial of Perkins's motion for the grand-jury transcripts. Perkins "has not sustained his burden of showing that nondisclosure of the grand jury testimony deprived him of a fair trial. The fact that the grand jury indicted him on elevated charges is not in and of itself a sufficient showing of particularized need." *Benge,* 75 Ohio St.3d at 145, 661 N.E.2d 1019. Further, the fact that the judge, with the agreement of the prosecutor and defense attorney, reviewed the transcript, in camera and ex parte, was not an implicit ruling by the court that there was a "particularized need." However, since the trial court undertook a review of the grand-jury testimony, we have done so as well and find no error in the trial court's refusal to release it. There being no abuse of discretion, Perkins's second assignment of error is overruled.

{¶ 51} Perkins's third assignment of error is as follows:

{¶ 52} "The trial court abused its discretion and prejudicially erred in admitting, over objection, inflammatory, irrelevant and highly prejudicial evidence against Perkins."

{¶ 53} Perkins sought to exclude testimony that he swung a two-by-four at Fugate after the assault on Mullins.

{¶ 54} "A reviewing court will not reverse the trial court's admission of evidence absent an abuse of discretion." *State v. Bellomy,* Montgomery App. No.

21452, 2006-Ohio-7087, 2006 WL 3849076. Evid.R. 403(A) provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 55} R.C. 2945.59 provides, "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶ 56} Perkins initially directs our attention to *State v. Thompson* (1981), 66 Ohio St.2d 496, 20 O.O.3d 411, 422 N.E.2d 855. Thompson was convicted of having sexual contact with a person, not his spouse, who is less than 13 years of age. The indictment provided that the offenses occurred from June 1, 1977, through September 30, 1977, and the victim's 13th birthday was October 10, 1977. The prosecutor elicited testimony from the victim that Thompson also engaged in sexual conduct with her after her birthday. The court of appeals granted a new trial, and Thompson's motion for leave to appeal was granted. The Supreme Court determined that, since the "sole purpose of the subsequent act evidence * * * was to convince the jury that the appellee was deserving of punishment, and that it was likely that he had sexual contact with [the victim] prior to her 13th birthday because he engaged in similar conduct thereafter[,] * * * the testimony did not fall into the 'scheme, plan, or system' exception of R.C. 2945.59 and was improperly allowed." Id. at 498.

{¶ 57} Perkins also relies upon *State v. Sims,* Cuyahoga App. No. 85341, 2005-Ohio-4299, 2005 WL 1995000. Following Sims's conviction for rape, kidnapping, and intimidation, the trial court granted his motion for a new trial, based "on the prosecutor's repeated efforts to disregard evidentiary rulings," and the state appealed, asserting in part that the trial court improperly excluded evidence of "other acts" that the trial court deemed to be unduly prejudicial. Id. at ¶ 28. The state sought to introduce allegations of sexual harassment made against the defendant by his female coworkers as evidence of his "system." Id. at ¶ 34. The Eighth District determined that "any tendency Sims possessed to subject his female coworkers to sexually offensive remarks, or even offensive touches as they walked past him, cannot be deemed acts which are distinctive enough to qualify as indicative of his 'method of operating' in committing the completely distin-

guishable crimes of rape, kidnapping, or intimidation. The other acts neither form a part of the immediate background of the offenses, nor demonstrate the defendant's unique pattern of committing the crimes alleged." (Citations omitted). Id. at ¶ 40.

{¶ 58} The matter here is distinct from the above-cited cases. As the Supreme Court noted in *Thompson*, other-acts testimony is relevant and thus is admissible, under the "scheme, plan or system" exception of R.C. 2945.59 when those acts form part of the immediate background of the crime charged and hence are "inextricably related" to the act alleged in the indictment; that is, when the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime. "The jury is entitled to know the 'setting' of a case." Id. at 498.

{¶ 59} In overruling Perkins's motion regarding the evidence at issue, the trial court correctly noted that the testimony is "admissible evidence. It goes to show the Defendant's state of mind, part of the transaction." Fugate intervened in the assault on Mullins by Perkins, and Perkins responded by picking up a two-by-four and swinging it at Fugate. Less than five minutes later, when Morando arrived at the scene, he observed Perkins with the two-by-four still in his hand. In other words, Perkins's possession of the two-by-four was "inextricably related" to, or within the context and circumstances of, the felonious assault. Unlike the challenged acts in *Thompson* and *Sims*, which were distinct in time from the charged offenses, Perkins's possession and use of the two-by-four, after Fugate intervened in the assault, gives a complete picture of the charged offense.

{¶ 60} Lastly, Perkins argues that the trial court erred in failing to give a limiting instruction as to the testimony regarding the two-by-four. "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict." Crim.R. 30(A). Perkins did not object to the instructions given to the jury, nor did he specifically request a limiting instruction.

{¶ 61} Perkins's third assigned error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and FROELICH, JJ., concur.