[Cite as *State v. Richmond*, 2011-Ohio-6450.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 96155

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEMETRIUS RICHMOND

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540291

**BEFORE:** Sweeney, J., Kilbane, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** December 15, 2011

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr., Esq.
75 Public Square, Suite 1016
Cleveland, Ohio 44113-2098

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Mahmoud Awadallah, Esq.
        William Leland, Esq.
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶ 1} Defendant-appellant Demetrius Richmond ("defendant") appeals his convictions and consecutive sentences for rape, kidnapping, felonious assault, domestic violence, and child endangering. After reviewing the facts of the case and pertinent law, we affirm in part and remand for a limited sentencing hearing to address the issues of merger of allied offenses and court costs.

{¶ 2} On July 30, 2010, defendant was charged with 11 counts relating to abuse of his girlfriend's son, including domestic violence, five counts of felony child endangering, three counts of misdemeanor child endangering, felonious assault, rape, and kidnapping. The indictment included sexually violent predator and repeat violent offender specifications. The case proceeded to a jury trial where the following evidence was presented:

{¶ 3} In 2003, defendant moved in with his girlfriend K.W. ("mother") and her four children C.F., T.F.1., T.F.2., and D.F. The oldest of the children, C.F., is the alleged victim in this case. According to testimony from mother, C.F., and D.F., defendant physically and sexually abused C.F. over a period of several years.

{¶ 4} For example, in late August 2005, when C.F. was 11 years old, defendant threw C.F. out of bed, whipped him with a belt, and ordered him to take a shower. While C.F. was in the shower, defendant grabbed C.F.'s hand and threw him into the air. C.F. landed on the sink and fell to the ground. As a result of this incident, C.F. sustained a fracture in his upper arm near his shoulder.

{¶ 5} Later that day, C.F. complained to the babysitter that his shoulder hurt. The babysitter removed C.F.'s shirt and noticed that one shoulder appeared to be higher than the other, and the injured shoulder was swollen and hot. C.F. told the babysitter that defendant had knocked him down in the shower and caused the injury. The babysitter called mother and informed her of the injury, however, mother did not take C.F. to the hospital until three days later when her sister, W.C. ("aunt"), threatened mother that she would call the police if mother did not take C.F. to the hospital. Subsequent x-rays confirmed that C.F.'s arm was fractured.

{¶ 6} When aunt took C.F. to a follow-up visit with the doctor, C.F. disclosed that defendant had been abusing him. Mother and the children briefly moved in with aunt, but soon moved back in with defendant.

{¶ 7} Another example of the abuse occurred one night in October 2007, when C.F. was walking to the bathroom. Defendant grabbed C.F., took his pants off, and pulled him down onto a chair where defendant anally raped C.F. According to C.F.'s testimony, the rape lasted "10 or 15 minutes," defendant "was holding [him] down, [and] it hurt."

{¶ 8} After the rape, mother and defendant sent C.F. to the store. C.F. testified that he "was thinking about, should I go somewhere. * * * I wanted to kill myself. * * * I got my bike and rode off." Asked where he was going, C.F. testified, "Far, far away from [defendant]. Far, far away from my home." C.F. rode from his home on West 33rd Street and Lorain Avenue to Bay Village where he knocked on the door of a random house. When the homeowner opened the door, he found C.F. crying. C.F. stated that he had run away because he was being abused and he was afraid to go home. The police arrived and took C.F. to meet his mother, siblings, and social workers at a safe place.

{¶ 9} When the police arrived at the West 33rd Street house, they observed a man standing outside, who immediately fled. The Cuyahoga County Department of Child and Family Services ("CCDCFS") and the Cleveland police sex crimes unit investigated C.F.'s allegations of physical and sexual abuse. Mother told the authorities that she was afraid of defendant, and she and her children moved into a battered women's shelter, where they stayed for 11 months. CCDCFS's investigation determined that the abuse allegations were substantiated.

{¶ 10} Mother testified, however, that she and the children continued to see defendant during this time, and she admitted to lying to social workers about visiting defendant and about the abuse. Eventually, mother told police she did not want to prosecute defendant and would not allow investigators access to the children. She and the children moved back in with defendant, and the case was temporarily closed.

{¶ 11} By 2009, all of the children had been removed from mother's custody. The children's maternal grandmother called the police because they were afraid of defendant, who was still mother's boyfriend. The case was reopened, and Detective Georgia Hussein of the Cleveland police sex crimes unit interviewed C.F., who was living at the Berea Children's Home. C.F.'s initial reaction was relief that "somebody finally believes me." Det. Hussein also interviewed the other siblings and mother, who refused to disclose defendant's location. Det. Hussein arrested her for obstructing justice, and she later agreed to cooperate in the investigation to avoid an indictment.

{¶ 12} On November 15, 2010, the jury found defendant guilty on all counts. The court found defendant guilty on the notice of prior conviction, repeat violent offender, and sexual motivation specifications, but not guilty on the sexually violent predator specification. The court sentenced defendant to an aggregate term of 28 years in prison.

{¶ 13} Defendant appeals and raises 14 assignments of error for our review. In his first assignment of error, defendant argues as follows:

{¶ 14} "I. Defendant was denied his constitutional right to a jury trial when the court heard all specifications without a written jury waiver."

{¶ 15} Specifically, defendant argues that the sexually violent predator specification should have been tried to the jury.

{¶ 16} Pursuant to R.C. 2945.05, a valid jury waiver "shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof." However, R.C. 2971.02(A) states that, "In any case in which a sexually violent predator specification is included in the indictment * * * charging a violent sex offense * * * and in which the defendant is tried by a jury, the defendant may elect to have the court instead of the jury determine the sexually violent predator specification."

{¶ 17} Thus, bifurcation of a sexually violent predator specification is permissible at a defendant's election to have the court, instead of a jury, decide the issue. Additionally, specific statutory provisions prevail over general statutory provisions. *Trumbull Cty. Bd. Of Health v. Snyder* (1996), 74 Ohio St.3d 357, 658 N.E.2d 783. The Ohio Supreme Court has also held that R.C. 2945.05 does not apply to prior conviction specifications. *State v. Nagel* (1999), 84 Ohio St.3d 280, 286, 703 N.E.2d 773 (holding that "a specification is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or charges to which the specification is attached. Therefore, we have difficulty understanding precisely how it is that R.C. 2945.05 could be found to apply in circumstances where, as here, a defendant has received a jury trial on

the merits of the underlying charges alleged in the indictment"). This court has applied the same rationale to sexually violent predator specifications in *State v. Oldham* (May 13,1999), Cuyahoga App. No. 73644.

{¶ 18} In the instant case, the court found defendant not guilty of the sexually violent predator specification, therefore, defendant suffered no prejudice, and his first assignment of error is overruled.

{¶ 19} In his second assignment of error, defendant argues the following:

{¶ 20} "II. Defendant was denied due process of law when the court refused to examine the grand jury proceedings."

{¶ 21} Defendant alleges that because two prior indictments against him were dismissed the same day he proceeded to trial, disclosure of the grand jury transcript would have revealed that the process was manipulated and the prosecutors committed misconduct.

{¶ 22} Although there is a general rule of grand jury secrecy, the Ohio Supreme Court recently identified a limited exeption in *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶41:

{¶ 23} "[A]n accused is not entitled to review the transcript of grand jury proceedings 'unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy.' A particularized need is established 'when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the

defendant a fair trial.'   Determining whether a particularized need exists is a matter within the trial court's discretion."   (Internal citations omitted.)

{¶ 24} In the instant case, defendant fails to establish a particularized need for the grand jury transcripts.   "The fact that the grand jury indicted [a defendant] on elevated charges is not in and of itself a sufficient showing of particularized need."   *State v. Benge* (1996), 75 Ohio St.3d 136, 145, 661 N.E.2d 1019. Additionally, Ohio courts have "determined that a particularized need cannot be established on the basis of speculative pretrial allegations of potentially inconsistent testimony."   *State v. Perkins*, 191 Ohio App.3d 263, 2010-Ohio-5161, 945 N.E.2d 1083, ¶49 (citing   *State v. Godfrey*, 181 Ohio App.3d 75, 2009-Ohio-547, 907 N.E.2d 1230).

{¶ 25} Accordingly, defendant's second assignment of error is overruled.

{¶ 26} Defendant's third assignment of error states the following:

{¶ 27} "III.   Defendant was denied a fair trial and due process of law when a social worker was allowed to testify as to the truth of the allegations based upon interviews."

{¶ 28} Specifically, defendant argues that the court improperly allowed a social worker to testify that C.F.'s allegations were "substantiated," because this testimony amounted to an opinion as to the truthfulness of C.F.'s allegations.

{¶ 29} In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court held that in child sexual abuse cases, an expert may not give his opinion as to the child's veracity.    However, this court has found that *Boston*

does not apply when the child victim testifies and is subject to cross-examination. See, e.g., *State v. Manning*, Cuyahoga App. No. 90326, 2009-Ohio-1600. This court has also held that evidence of a social worker's determination regarding alleged abuse is acceptable, provided the social worker does not testify as to the truthfulness or credibility of the victim. *State v. Jackson*, Cuyahoga App. No. 92531, 2010-Ohio-3080.

{¶ 30} In the case at hand, C.F. testified and was subject to cross-examination.

{¶ 31} Moreover, CCDCFS social worker Michael Bockmiller did not offer an opinion about C.F.'s credibility. He testified that he is qualified to render a disposition of a case, as "substantiated, unsubstantiated, or indicated," and that these terms are not legal findings but agency determinations used to denote whether counseling, police investigation, or medical treatment is necessary. Bockmiller explained that a "substantiated" finding merely indicates that there is corroborative evidence of abuse or neglect. Bockmiller never offered an opinion on C.F.'s credibility or whether the alleged abuse occurred. He merely described CCDCFS procedure when investigating allegations of abuse.

{¶ 32} Therefore, the third assignment of error is overruled.

{¶ 33} In his fourth assignment of error, defendant argues as follows:

{¶ 34} "IV. Defendant was denied his right of confrontation and cross-examination when witnesses were allowed to testify as to information given by other persons."

{¶ 35} We review issues concerning Confrontation Clause violations under a de novo standard. *State v. Babb*, Cuyahoga App. No. 86294, 2006-Ohio-2209. Pursuant to the Sixth Amendment to the United States Constitution, out-of-court statements that are testimonial in nature are inadmissible unless the declarant is unavailable and the defendant was given a prior opportunity for cross-examination. *Crawford v. Washington* (2004), 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. This test does not apply to nontestimonial hearsay. Id.

{¶ 36} Thus, as a threshold matter, courts must determine whether statements are testimonial before subjecting them to *Crawford* standards. Id. at 51-52. Testimonial statements are, among other things, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." (Internal citations omitted.) Id. "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of syllabus.

{¶ 37} Defendant argues that the following statements violate *Crawford*: mother's testimony about what C.F. and a social worker stated to her; aunt's testimony about what babysitter stated to her; and Bay Village Police Detective Kevin Krolkosky's testimony about what C.F. stated to him.

{¶ 38} Upon review we find that all declarants — C.F., social worker Bockmiller, and babysitter — testified at trial and were subject to cross-examination. The *Crawford* Court reiterated "that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See *California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. 59 at fn. 9.

{¶ 39} As *Crawford* and the Confrontation Clause have no bearing on the instant case, defendant's fourth assignment of error is overruled.

{¶ 40} In defendant's fifth assignment of error, he argues the following:

{¶ 41} "V. Defendant was denied a fair trial when the court allowed evidence of other bad acts and failed to give any limiting or curative instruction."

{¶ 42} Specifically, defendant argues that mother's testimony that he routinely punched C.F. in the chest as a form of punishment, that he "was messing with one or two of [her] kids," and that she and defendant "used a lot of drugs * * * together," was unfairly prejudicial and in violation of Evid.R. 404(B).

{¶ 43} The decision to admit or exclude relevant evidence is within the sound discretion of the trial court. *State v. Bey* (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484. Pursuant to Evid.R. 403(A), relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Furthermore,

Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also, R.C. 2945.59.

{¶ 44} The "other acts" testimony at issue in the instant case does not squarely fall into one of the enumerated exceptions listed in Evid.R. 404(B) for the admission of evidence. However, defendant did not request, nor did the court give to the jury, a limiting instuction. Accordingly, we must consider whether this constituted plain error. Crim.R. 52(B); *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

{¶ 45} Assuming the testimony was improper, upon review, we find any error harmless given the overwhelming evidence of defendant's guilt, which was corroborated by numerous witnesses. See *State v. Williams* (1988), 38 Ohio St.3d 346, 351, 528 N.E.2d 910 (holding that "[a]lthough the state clearly overstepped the bounds of proper judicial inquiry in cross-examining appellant, we are unable to agree that the error was materially prejudicial to appellant. After a thorough review of the record, we do not doubt that the remaining, properly introduced evidence overwhelmingly establishes appellant's guilt").

{¶ 46} Accordingly, defendant's fifth assignment of error is overruled.

{¶ 47} In his sixth assignment of error, defendant argues the following:

{¶ 48} "VI.   Defendant was denied due process of law when * * * he was tried, convicted and sentenced on offenses for which the statute of limitations had expired."

{¶ 49} R.C. 2901.13(A)(1)(b) provides that the statute of limitations for a misdemeanor is two years.   The domestic violence charge and one count of child endangering allegedly occurred between August 22, 2005 and October 19, 2007. The indictment against defendant was filed on July 30, 2010.   Thus, these two misdemeanor offenses were charged more than two years after their occurrence.

{¶ 50} However, because defendant has already served his sentence on these charges, this assignment of error is moot.   On January 24, 2011, the court sentenced Richmond to six months on both counts to be served concurrent to his aggregate 28-year prison sentence.   The Ohio Supreme Court has held that "[w]here a defendant, convicted of a criminal offense, has * * * completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference could be drawn that defendant would suffer some collateral disability or loss of civil rights from the judgment or conviction."   *State v. Wilson* (1975), 41 Ohio St.2d 236, 325 N.E.2d 236, syllabus.

{¶ 51} Furthermore, in *State v. Payne*, Summit App. No. 21178, 2003-Ohio-1140, the court found that the defendant would not suffer any collateral disability or loss of civil rights where the six-month misdemeanor assault sentence ran concurrently with a longer felony sentence, and the misdemeanor sentence had been fully served.

{¶ 52} As defendant has served his sentence on the two misdemeanor charges, his sixth assignment of error is overruled as moot.

{¶ 53} In defendant's seventh assignment of error, he argues that:

{¶ 54} "VII. Defendant was denied due process of law when the court [failed] to give an accomplice instruction concerning the testimony of [mother]."

{¶ 55} Specifically, defendant argues that the court should have given the jury a cautionary instruction concerning mothers' testimony against him because mother was an accomplice to the offenses. However, because defendant failed to request this instruction, we review the issue for plain error. Crim.R. 52(B).

{¶ 56} Generally, accomplice testimony is admissible when accompanied by the cautionary jury instruction found in R.C. 2923.03(D), which states as follows:

{¶ 57} "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of * * * an offense, the court, when it charges the jury, shall state substantially the following:

{¶ 58} 'The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

{¶ 59} 'It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"

{¶ 60} Ohio courts have found that the failure to give an accomplice instruction was harmless when no instruction was requested and the remaining evidence against the defendant overwhelmingly supported a conviction. *State v. Ochoa,* Lucas App. No. L-03-1197, 2004-Ohio-6465; *Cleveland Hts. v. Riley* (May 20, 1999), Cuyahoga App. No. 74101.

{¶ 61} In the case at hand, although the jury was not given the accomplice instruction, they were aware that mother was an accomplice testifying for the state against defendant in exchange for immunity. Moreover, several other witnesses including C.F., his sister, aunt, and babysitter corroborated mother's testimony that defendant broke C.F.'s arm and abused him. Additionally, the court instructed the jury that it was to determine the credibility of the witnesses and the weight of the testimony, taking into consideration "the interest or bias the witness has in the outcome of the verdict."

{¶ 62} Therefore, the failure to give the required accomplice instruction was harmless and defendant's seventh assignment of error is overruled.

{¶ 63} In defendant's eighth and ninth assignments of error, he argues as follows:

{¶ 64} "VIII. Defendant was denied due process of law when the court ruled on defendant's motion for judgment of acquittal."

{¶ 65} "IX. Defendant's convictions are against the manifest weight of the evidence."

{¶ 66} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 67} To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id.

{¶ 68} Defendant argues that his convictions are "based upon lies, contradictions, fabrications and totally inconsistent statements on the same subject matter by the same witness." Specifically, defendant alleges that two of the witnesses admitted during their testimony that they were "serial liars." Mother testified that she initially lied to the authorities about this case by denying knowledge of defendant's whereabouts and his abuse of C.F. Mother testified that she lied to protect defendant when her mind was clouded from using drugs.

Additionally, C.F. testified that, in general, he used to lie a lot. For example, he admitted lying to healthcare providers so that he could stay in the hospital.

{¶ 69} Upon review, we summarily overrule defendant's eighth assignment of error, because defendant's argument is based solely on witness credibility, which is not a factor that affects whether a conviction is supported by sufficient evidence. See App.R. 12(A)(2) and 16(A)(7).

{¶ 70} We turn to defendant's argument that his convictions are against the manifest weight of the evidence because mother's and C.F.'s testimony was not credible. In *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212, the Ohio Supreme Court held that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." A jury is free to believe all, part, or none of any witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548. Additionally, the Ohio Supreme Court has noted, "where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742.

{¶ 71} In the instant case, mother and C.F. testified consistently that defendant repeatedly abused C.F. This was corroborated by C.F.'s younger sister, who witnessed the incident when defendant threw C.F. out of the shower. Additionally, evidence of C.F.'s injuries was supported by aunt's testimony,

babysitter's testimony, and C.F.'s medical records.   The jury was able to see the witnesses and judge their credibility while they were testifying.

{¶ 72} Accordingly, we find that defendant's convictions were not against the manifest weight of the evidence, and his ninth assignment of error is overruled.

{¶ 73} In his tenth and eleventh assignments of error, defendant contends the following:

{¶ 74} "X.   Defendant was denied his rights under the Sixth Amendment when he was sentenced [to] a maximum consecutive sentence based upon judicial factfinding."

{¶ 75} "XI.   Defendant was denied due process of law when the court imposed a consecutive, maximum ten (10) year sentence for a repeat violent offender when the court failed to make the statutory findings."

{¶ 76} In the instant case, the court sentenced defendant to the maximum ten years in prison for the rape conviction, the maximum eight years for felonious assault, and the maximum ten years for the repeat violent offender specification, to run consecutive to one another for an aggregate sentence of 28 years in prison.  The sentence for defendant's remaining counts was to run concurrently.

{¶ 77} The Ohio Supreme Court set forth the standard for reviewing felony sentencing in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. See, also, *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *Kalish*, in a plurality decision, holds that appellate courts must apply a two-step approach when analyzing alleged error in a trial court's sentencing.

"First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id. at ¶4. Additionally, in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶39, the Ohio Supreme Court held that "trial judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences * * *."

{¶ 78} In the instant case, defendant does not argue that his sentence is contrary to law, and upon review, we find that it is within the statutory range and does not violate the first prong of *Kalish*. Furthermore, we find that the court acted within its discretion when sentencing defendant to 28 years in prison.

{¶ 79} The sentencing transcript shows that the trial court considered the facts of the case, the seriousness of the offenses, defendant's lengthy criminal record, and lack of remorse. It also shows that the "court has considered the seriousness and recidivism factors and purposes and principles of Senate Bill 2. Prison is very expensive in this state, and in some cases, it's well worth it. This is one of those cases * * * You are a sadistic bully who preys on weak, defenseless individuals. You picked on a defenseless, little boy and used him as your punching bag for years."

{¶ 80} The trial court properly considered the factors in R.C. 2929.12 and adhered to the purposes and principles of sentencing set forth in R.C. 2929.11.

Therefore, this court cannot say that the trial court abused its discretion in imposing maximum consecutive sentences in this case.

{¶ 81} Accordingly, the tenth and eleventh assignments of error are overruled.

{¶ 82} In his twelfth assignment of error, defendant argues that:

{¶ 83} "XII.    Defendant was subjected to unconstitutional multiple punishments when the court failed to merge various counts of the indictment."

{¶ 84} Specifically, defendant argues that the court failed to merge his felonious assault, domestic violence, and child endangering convictions for purposes of sentencing.   He further argues that his rape and kidnapping convictions should have merged for sentencing; however, a cursory review of the record shows that the court merged these two convictions, and this argument is without merit.

{¶ 85} Defendant failed to object to the court's imposition of multiple sentences and has therefore waived all but plain error.   Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."   The Ohio Supreme Court has expressly held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶96-102.

{¶ 86} The Ohio Supreme Court recently established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶48-50 (emphasis in original; internal citations omitted).

{¶ 87} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶ 88} "'If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'

{¶ 89} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged."

{¶ 90} Felonious assault is defined in R.C. 2903.11(A)(1) as follows: "No person shall knowingly * * * [c]ause serious physical harm to another * * *." Domestic violence is defined in R.C. 2919.25(A) as follows: "No person shall knowingly cause * * * physical harm to a family or household member." Endangering children is defined in R.C. 2919.22(A) as follows: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial

risk to the health or safety of the child, by violating a duty of care, protection, or support."   Additionally, defendant was convicted of a furthermore clause, stating that the child endangerment "violation resulted in serious physical harm * * *."

{¶ 91} In analyzing these three offenses under *Johnson*, we find that they can be committed by the same conduct.   Defendant was indicted for one count of felonious assault, one count of domestic violence, and five counts of endangering children for conduct that occured between August 22 and 25, 2005.   Evidence presented at trial shows that defendant whipped C.F. with a belt, then threw C.F. out of the shower and injured his shoulder between these dates.   We conclude that the whipping is "a single act, committed with a single state of mind," and the shoulder injury is a second act conducted with a separate animus.   Thus, defendant's convictions for four counts of endangering children regarding the whipping should have merged for sentencing, and one count each of felonious assault, domestic violence, and endangering children regarding the shoulder injury should have merged for sentencing.   See *State v. Sutphin*, Cuyahoga App. No. 96015, 2011-Ohio-5157; *State v. Craycraft*, 193 Ohio App.3d 594, 2011-Ohio-413, 953 N.E.2d 337.

{¶ 92} Defendant's twelfth assignment of error is sustained, and this matter is remanded to the trial court for further proceedings concerning allied offenses. Pursuant to *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶24, the state may elect which of the offenses to pursue on resentencing.

{¶ 93} In defendant's thirteenth assignment of error, he argues as follows:

{¶ 94} "**XIII.** Defendant was denied due process of law when the court imposed court costs in the judgment entry of sentence but did not do so in open court."

{¶ 95} R.C. 2947.23(A)(1) provides that "[i]n all criminal cases the judge or magistrate shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." In *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, the Ohio Supreme Court held that it is reversible error for the trial court to impose costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing.

{¶ 96} In the instant case, the state concedes that the trial court failed to impose court costs during defendant's sentencing. Accordingly, defendant's thirteenth assignment of error is sustained and this matter is remanded to the trial court for the limited purpose of allowing defendant to move for waiver of court costs.

{¶ 97} In his fourteenth and final assignment of error, defendant argues the following:

{¶ 98} "**XIV.** Defendant was denied effective assistance of counsel."

{¶ 99} Specifically, defendant argues that his trial counsel was ineffective for failing to request merger of allied offenses at sentencing, failing to move for dismissal for violation of speedy trial, and failing to dismiss counts barred by the statute of limitations.

{¶ 100} "To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. In *State v. Bradley*, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if the defendant fails to prove the second prong of prejudicial effect. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 101} Upon review we find that defendant has failed to show that his counsel's alleged omissions had a prejudicial effect on the outcome of trial. First, the failure to request merger of allied offenses is rendered moot by the disposition of defendant's twelfth assignment of error. Second, defendant fails to show that he was denied the right to a speedy trial, arguing summarily that he was "in jail for over one (1) year * * *." Third, we overruled defendant's assignment of error concerning the statute of limitations for misdemeanor offenses.

{¶ 102} Accordingly, defendant's final assignment of error is overruled.

{¶ 103} Judgment affirmed in part, reversed in part and remanded for a limited sentencing hearing to address the issues of merger of allied offenses and court costs.

{¶ 104} It is ordered that appellee and appellant split the costs herein taxed.

{¶ 105} The court finds there were reasonable grounds for this appeal.

{¶ 106} It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

{¶ 107} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS;
COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY