**[Cite as *State v. Gillispie*, 2021-Ohio-4157.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, et al. | : | |
| | : | |
| Appellants | : | Appellate Case Nos. 29075 & 29096 |
| | : | |
| v. | : | Trial Court Case No. 1990-CR-2667 |
| | : | |
| ROGER DEAN GILLISPIE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 24th day of November, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
  Attorney for Appellant, State of Ohio

FRANK H. SCIALDONE, Atty. Reg. No. 0075179 and CARA M. WRIGHT, Atty. No. 0084583, 100 Franklin's Row, 34305 Solon Road, Cleveland, Ohio 44139
  Attorneys for Appellant, Matthew Scott Moore

EDWARD J. DOWD, Atty. Reg. No. 0018681, DAWN M. FRICK, Atty. Reg. No. 0069068 and CHRISTOPHER T. HERMAN, Atty. Reg. No. 0076894, 8163 Old Yankee Street, Suite C, Dayton, Ohio 45458
  Attorneys for Appellant, Miami Township, Ohio

MICHELE L. BERRY, Atty. Reg. No. 0081939, 3584 Mooney Avenue, Cincinnati, Ohio 45208

and
DAVID B. OWENS, pro hac vice, 311 North Aberdeen Street, Third Floor, Chicago, Illinois, 60607
        Attorneys for Appellee, Roger Dean Gillispie

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} The State of Ohio, Miami Township, and Matthew Scott Moore appeal from the trial court's decision, entry, and order sustaining appellee Roger Dean Gillispie's motion for disclosure of grand-jury transcripts. Gillispie sought the transcripts in connection with his pending federal lawsuit against Moore and others alleging violations of 42 U.S.C.1983 and seeking compensation for wrongful imprisonment. The federal lawsuit followed Gillispie's release from prison after serving 20 years for three rape convictions. Gillespie was released pursuant to a federal writ of habeas corpus, and the rape charges later were dismissed with prejudice. In ordering disclosure of the grand-jury transcripts, the trial court found that Gillispie had shown a "particularized need" that outweighed the need to maintain grand-jury secrecy.

{¶ 2} For the following reasons, we hold that the trial court abused its discretion in ordering full disclosure and production of the grand-jury transcripts "without exception or limitation." Although the record supports releasing portions of one transcript, the trial court erred in ordering the release of all grand-jury testimony from all four witnesses. Accordingly, the trial court's judgment will be affirmed in part and reversed in part.

## I. Factual and Procedural Background

{¶ 3} A jury convicted Gillispie on three counts of rape and other charges in 1991. After being granted a new trial, he was convicted again by a second jury. Witnesses at both trials included the victims and Moore, who was the lead investigator. This court

affirmed Gillispie's convictions on direct appeal. Two decades of post-conviction actions followed, culminating in (1) the U.S. District Court for the Southern District of Ohio granting Gillispie a conditional writ of habeas corpus based on a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), vacating his convictions, and ordering him retried and (2) this court ordering a new trial based on an alternate-suspect theory. *See Gillispie v. Timmermans-Cooper*, 835 F.Supp.2d 482 (S.D. Ohio 2011); *State v. Gillispie*, 2d Dist. Montgomery No. 26965, 2016-Ohio-7688. Following the State's inability to produce supplemental police reports underlying the *Brady* violation, the trial court later dismissed Gillespie's indictment with prejudice. Gillispie then filed a lawsuit in federal court alleging violations of 42 U.S.C. 1983. The lawsuit included several state-law claims. Defendants in the action included Moore and Miami Township. In September 2020, the federal court disposed of all claims except the section 1983 claims against Moore.

{¶ 4} Gillispie filed a motion in the trial court below seeking transcripts of grand jury testimony from Moore and the three rape victims. He argued that he needed the testimony to obtain a fair adjudication of his federal claims and that such need outweighed any need to maintain grand-jury secrecy. In a March 25, 2021 ruling, the trial court sustained Gillispie's motion. It ordered disclosure and production of the grand-jury testimony of all four witnesses "without exception or limitation." This appeal followed.

## II. Governing Law

{¶ 5} The long-standing rule in Ohio and elsewhere is that grand-jury proceedings are secret. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399-400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) (recognizing a history and tradition of grand-jury secrecy "older than our Nation itself"); *In re Rice*, 2018-Ohio-1087, 109 N.E.3d 608, ¶ 18 (8th Dist.)

("It is critical to its functioning that the secretive nature of the work of a grand jury remain sacrosanct and inviolable. As such, that secrecy has long been 'jealously guarded' by Ohio courts."). The Ohio Supreme Court has recognized a "limited exception" allowing disclosure of grand-jury transcripts where " 'the ends of justice require it and there is a showing * * * that a particularized need for disclosure exists which outweighs the need for secrecy.' " *State v. Graham*, 164 Ohio St. 3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 25, quoting *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph two of the syllabus.

{¶ 6} "A particularized need is established 'when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the [movant] a fair trial.' " *Id.*, quoting *State v. Sellards*, 17 Ohio St.3d 169, 173, 478 N.E.2d 781 (1985). A particularized need for grand-jury testimony may arise when such testimony is required to impeach a witness, to refresh recollection, or to test credibility. *Greer* at 145, citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The particularized-need requirement helps ensure that when grand-jury secrecy is lifted, it is done "discretely and limitedly." *Proctor & Gamble Co.* at 683. Whether a particularized need exists is a question of fact for a trial court to resolve within its discretion. *State v. Perkins*, 191 Ohio App.3d 263, 2010-Ohio-5161, 945 N.E.2d 1083, ¶ 45 (2d Dist.).

{¶ 7} To evaluate the need for secrecy of grand-jury proceedings, courts consider the following rationales for preserving secrecy: " '(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from

importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.' " *In re Petition for Disclosure of Evidence Presented to Franklin County Grand Juries in 1970*, 63 Ohio St.2d 212, 219, 407 N.E.2d 513, (1980), quoting *United States v. Rose*, 215 F.2d 617, 628-629 (3d Cir.1954).

{¶ 8} We review a trial court's ruling regarding access to grand-jury testimony for an abuse of discretion. *State v. Brown*, 38 Ohio St.3d 305, 308, 528 N.E.2d 523 (1988). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* at ¶ 46. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

### III. Analysis

{¶ 9} In a joint brief, Miami Township and Moore advance the following assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT COMPROMISED THE SECRECY OF THE GRAND JURY WHEN IT RULED THAT PETITIONER-GILLISPIE HAD DEMONSTRATED

PARTICULARIZED NEED AND DISCLOSED THE TRANSCRIPT OF THE GRAND JURY PROCEEDINGS.

{¶ 10} In a separate appellate brief, the State raises the following two assignments of error:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY RELEASING GRAND JURY TRANSCRIPTS IN THEIR ENTIRETY WITHOUT FIRST PROPERLY DETERMINING WHETHER THE PARTICULARIZED NEED FOR THE TRANSCRIPTS THAT GILLISPIE ALLEGED COULD BE MET THROUGH OTHER SOURCES.

THE TRIAL COURT ERRED BY FINDING THAT THERE IS NO NEED TO PRESERVE THE SECRECY OF THE GRAND JURY PROCEEDINGS IN THIS CASE IN ANY FORM AND TO ANY EXTENT.

{¶ 11} We begin our analysis by recognizing that four of the five traditional justifications for preserving grand-jury secrecy do not apply here. There is no concern about Gillispie "escaping" before his indictment. There is no risk of people importuning his grand jurors, suborning perjury, or tampering with the grand jurors. Nor is there any concern about protecting Gillispie from disclosure of the fact that a grand jury investigated him. Given that the grand-jury proceedings concluded more than 30 years ago and Gillispie previously was indicted and convicted, the foregoing considerations do not justify maintaining grand-jury secrecy in this case.

{¶ 12} One factor, however, remains applicable, namely the need to encourage free and full disclosures by potential future grand-jury witnesses. The U.S. Supreme Court has recognized that "[p]arties seeking grand jury transcripts * * * must show that the

material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). "Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations * * *. *For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries*." (Emphasis added.) *Id*. The practice of disclosing grand-jury testimony "renders considerably more concrete the threat to the willingness of witnesses to come forward and to testify fully and candidly." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 432, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983); *see also State v. Owens*, 4th Dist. Gallia No. 14CA9, 2015-Ohio-3017, ¶ 14 (quoting *Douglas Oil* and noting that "concerns with freedom in grand jury deliberations and the encouragement of free and untrammeled disclosures by persons with information are always present because * * * '[p]ersons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties' ").

{¶ 13} As the need for secrecy decreases, however, the requisite showing of particularized need also decreases. *Douglas Oil* at 223 (noting that "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification"). "[W]hen there is a balancing of the often minimal need to preserve secrecy against the need for the defendant to review certain portions of the grand jury testimony, * * * all relevant portions of the transcript

should be produced, with the trial court deleting extraneous matters, and issuing protective orders where necessary." *Greer* at 151.

{¶ 14} In the present case, the trial court ignored the residual interest in preserving grand-jury secrecy that remains even after a criminal case long since has concluded. It found that the appellants had "utterly failed to establish any need for secrecy." (March 25, 2021 Decision, Entry, and Order at 3.) In response to the appellants' concern about a potential "chilling effect" on future grand juries if the transcripts at issue were released, the trial court characterized their argument as "advocating for secrecy for the sake of secrecy." It reasoned that, "followed to its logical conclusion, the State's 'chilling effect' argument would literally prohibit the discovery, production and use of [g]rand [j]ury [t]estimony in every case, no matter the State's excesses." The trial court opined that "[t]his cannot be the law in a free society." (*Id.* at 8-9.)

{¶ 15} The case law cited above makes clear, however, that recognizing the potential impact of disclosure on the functioning of future grand juries does not "literally prohibit" the release of any grand-jury testimony in every case. Rather, case law establishes that this residual interest in preserving secrecy simply must be weighed against the movant's particularized need for disclosure. As our analysis herein will demonstrate, a movant's interest in disclosure sometimes may outweigh a relatively minor interest in maintaining secrecy. In such a case, a court should release only necessary portions of a grand-jury transcript while excluding extraneous testimony.

{¶ 16} Having found that a general interest in preserving grand-jury secrecy still exists in this case, we turn to the particularized-need issue. In his attempt to establish a particularized need for the grand-jury transcripts, Gillispie finds himself in a better position

than most litigants. In the proceedings below, the trial court actually reviewed those transcripts and permitted counsel to do likewise. In this posture, Gillispie need not speculate about whether the grand-jury transcripts might contain testimony that is useful to impeach a witness, to refresh recollection, or to test credibility in his federal lawsuit. Having enjoyed the benefit of examining the transcripts, the parties know what they contain.

**{¶ 17}** Based on his review of the transcripts, Gillispie argued below that he needed Moore's grand-jury testimony to ensure a fair adjudication of his section 1983 claims and to prevent misleading the trier-of-fact in the federal lawsuit. In post-hearing briefing before the trial court, Gillispie noted that Moore sometimes failed to remember certain facts about his investigation while being deposed in 2018. Gillispie also argued that Moore's grand-jury testimony disclosed previously unknown facts and sometimes contradicted Moore's later statements in the rape case. In all, Gillispie's post-hearing brief cited more than 20 instances during Moore's 2018 deposition in which he failed to recall things about his investigation. Gillispie's post-hearing brief also cited seven specific instances in which he believed Moore's grand-jury testimony was needed for purposes of refreshing recollection, impeaching, or testing Moore's credibility. (March 19, 2021 Petitioner's Brief at 10-21.) Because Gillispie bore the burden of establishing a particularized need, we will confine our review of Moore's grand-jury testimony to the instances he cited.

**{¶ 18}** In conducting our review, we are mindful that no particularized need exists if Gillispie can obtain elsewhere the information he seeks from grand-jury testimony. Indeed, if Moore's testimony before the grand jury was merely cumulative of statements

he made other places (including reports, hearings, at the two criminal trials, or in his 2018 deposition), then no "need" for the grand-jury testimony exists at all. In such a circumstance, Gillispie can refresh recollection, impeach, or otherwise test Moore's credibility by using an alternative source. *See In re January 27, 2017 Order Releasing Grand Jury Materials*, 2018-Ohio-988, 108 N.E.3d 1170, ¶ 10 (2d Dist.) (finding no "particularized need" where "the transcript of M.H.'s grand jury testimony would provide little or no additional information germane to C.P.'s claim against M.H."); *State v. Webb*, 2d Dist. Greene No. 2005-CA-52, 2006-Ohio-1113, ¶ 13 (finding an absence of particularized need where appellant "did not present a compelling argument that the only way for him to substantiate his claims against the deputies was through the use of the grand jury testimony"); *State ex rel. Dann v. Taft*, 109 Ohio St. 3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 68 (recognizing in the executive-privilege context that particularized need "does not exist when privileged information can be obtained elsewhere").

{¶ 19} In his post-hearing brief below, Gillispie listed 29 pages from Moore's 2018 deposition in which Moore purportedly failed to recall specifics of his investigation. Gillispie claimed Moore's grand-jury testimony was necessary to refresh the detective's recollection on those issues. With one exception that will be discussed below, however, Gillispie made no attempt to show how the grand-jury testimony would help refresh Moore's recollection on any particular issue. Likewise, on appeal Gillsipie simply refers to deposition pages where Moore failed to remember things. (Brief of Appellee-Petitioner at 17, 22.) For its part, the trial court also noted Moore's inability to remember things during his 2018 deposition. (March 25, 2021 Decision, Entry, and Order at 5.) It does not follow, however, that Gillispie needs Moore's grand-jury testimony simply because Moore cannot

remember certain things. Without any showing that Moore's grand-jury testimony would refresh Moore's recollection on a particular issue (and that Moore's recollection could not be refreshed from another source), Gillsipie failed to demonstrate a particularized need for the grand-jury testimony for refreshment purposes.[1]

{¶ 20} With regard to the seven specific arguments raised in Gillispie's post-hearing brief below, he did assert that he needed grand-jury testimony to refresh Moore's recollection about a composite sketch of the rape suspect. When testifying before the grand jury, Moore identified who drew the sketch. In his 2018 deposition, he could not recall that information. The appellants argue that the artist's identify is not relevant to the federal lawsuit, whereas Gillispie claims the artist's identify is a proper subject of discovery in that action. Upon review, we fail to see how the identity of the sketch artist (who was not Moore) is itself relevant to Gillispie's section 1983 claims. At most, the artist's identity perhaps could lead to the discovery of relevant information in the federal lawsuit. But such an assertion is speculative, and grand-jury testimony is not properly disclosed to aid in general discovery. *Greer* at 147, quoting *State v. Laskey*, 21 Ohio St.2d 187, 191, 257 N.E.2d 65 (1970), *vacated on other grounds*, *Lasky v. Ohio*, 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753 (1972); *see also State v. Boehm*, 2d Dist. Montgomery No. 16335, 1997 WL 856285, *2 (Dec. 31, 1997); *State v. Carte*, 8th Dist. Cuyahoga No. 91534, 2009-Ohio-4193, ¶ 28; *State v. Tenbrook*, 34 Ohio Misc.2d 14, 15, 517 N.E.2d

---

[1] This court itself could examine each of the 29 pages cited from Moore's deposition and then independently study his grand-jury testimony to seek to determine whether anything in the grand-jury transcript might refresh his recollection on a material issue. But "[a]n appellate court is not a ferret[.]" *State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2011-Ohio-2976, ¶ 42 (Froelich, J., concurring). Gillispie bore the burden to demonstrate a particularized need to use Moore's grand-jury testimony for refreshment purposes. String citing 29 pages from a deposition failed to meet this burden.

1046 (Cuyahoga C.P.1987). Regardless, we see no probability that a failure to provide Gillispie with the identity of a sketch artist will deprive him of a fair trial in federal court.

{¶ 21} Gillispie's second attempt to show particularized need involved the timing of Moore's involvement with the rape investigation. Moore consistently asserted in connection with Gillispie's criminal trial and his deposition in federal court that he was assigned to the case on June 18, 1990. In his grand-jury testimony, however, Moore testified that he was assigned to the case in May 1990. Gillispie claims this discrepancy is significant insofar as it impacts what was in the investigatory file when Moore became involved. One issue in federal court is an allegation that Moore suppressed or destroyed an exonerating report prepared by other detectives who were working on the case in May 1990. If Moore also was working on the case in May 1990, this fact would lend credence to Gillispie's theory that Moore knew about the report—a fact Moore denies.

{¶ 22} The appellants contend Gillispie should not be allowed to use the grand-jury testimony because he previously never disputed whether Moore's involvement began in June 1990. Prior to reviewing the grand-jury testimony, however, Gillispie had no reason to dispute Moore's claim about when he became involved. Now Gillispie does have a reason to question the timing of Moore's involvement. The trial court did not abuse its discretion in finding that Gillispie's need for this portion of Moore's grand-jury testimony outweighed any interest in keeping it secret.

{¶ 23} Gillispie's third argument on the particularized-need issue concerned Moore's interaction with Richard Wolfe, who had been Gillispie's supervisor at General Motors. Wolfe arrived at the police department during the investigation and dropped off several employee identification cards, including one from Gillispie. At trial, Moore testified

that he obtained the ID cards from Wolfe outside the police department and gave them to Sergeant Steven Fritz. In his 2018 deposition, Moore recalled briefly meeting with Wolfe and Fritz about the cards inside the police department and Fritz putting the cards in a file. Gillispie contends both of the foregoing accounts conflict with Moore's grand-jury testimony, in which Moore recounted Wolfe meeting with him inside the police department, placing the cards on Moore's desk along with a composite sketch of the suspect, and proceeding to compare the composite with the ID cards in the presence of Moore and possibly other detectives. In our view, this aspect of Moore's grand-jury testimony potentially conflicts with his trial testimony and deposition. Once again, the trial court did not abuse its discretion in finding that Gillispie's need for this portion of Moore's grand-jury testimony outweighed the residual interest in keeping it secret.

{¶ 24} In his fourth argument regarding particularized need, Gillispie addressed Moore's possession of campground receipts related to an alibi defense. In the criminal proceeding, Gillispie claimed that he had been camping in Kentucky on August 28, 1988, when two of the rapes occurred. Gillispie contends Moore obtained and then suppressed or destroyed campground records that would have confirmed the alibi. Moore has denied this claim, insisting that the only Kentucky campground receipts he obtained were for the dates of May 26, 1988, June 24, 1988, and July 15, 1988. In opposition to this assertion, Gillispie cited grand-jury testimony from Moore about having a "few months" of registration cards and about Gillispie being at the campground "four days after the girls got raped." Gillispie contended this testimony at least implied that Moore had "scores of records," including records establishing that Gillispie was at the campground shortly after the rapes. Although the appellants dispute Gillispie's interpretation of Moore's grand-jury

testimony, he raised a legitimate issue with which to attempt to impeach Moore or to test his credibility. In addition, we are unaware of anywhere else in the record that Moore suggested he had records placing Gillispie at the campground days after the rapes. We see no abuse of discretion in the trial court ordering the release of this portion of Moore's grand-jury testimony.

{¶ 25} Gillispie's fifth particularized-need argument addressed Moore's interaction with Torrie Strohman, who was Gillispie's girlfriend just before the rapes. Gillsipie stressed that his section 1983 claims included allegations that Moore had fabricated, manipulated, and destroyed evidence related to conversations with Strohman, including written reports and audio recordings. Gillispie maintained that he needed grand-jury testimony about Moore's dealings with Strohman because the foregoing issues did not arise in the pretrial proceedings or at the criminal trials. Gillispie characterized Moore's testimony relative to Strohman as "extremely illuminating" and not duplicated elsewhere.

{¶ 26} In its ruling releasing Moore's entire grand-jury transcript, the trial court did not specifically address Gillispie's need for testimony about the detective's interaction with Strohman. On appeal, Gillsipie does not address the merits of this issue beyond citing his post-hearing brief. For their part, the appellants object to the trial court's wholesale disclosure of Moore's grand-jury testimony. But they do not specifically address Gillispie's need for testimony about the detective's interaction with Strohman.

{¶ 27} Having conducted our own review of Moore's grand-jury testimony about his conversations with Strohman, we see no particularized need for Gillispie to access it. Perhaps the most significant revelation in Moore's testimony was that Strohman told him she and Gillispie previously had engaged in sexual activity at or near the rape sites. Moore

included this information in one or more police reports, suggesting that it demonstrated Gillispie's familiarity with the crime scenes.

{¶ 28} In a September 21, 2020 summary judgment ruling, the federal district court noted that Strohman had filed an affidavit denying that she and Gillispie had been to the places where the rapes occurred. Her affidavit also alleged that Moore's reports and a transcript of their conversations contained other falsehoods and included additional things that she did not say. We have not been made aware of anything in Moore's grand-jury testimony that is inconsistent with the detective's later reports or statements. Rather, the conflict appears to be between Moore's statements and Strohman's affidavit. Gillispie has no need for Moore's grand-jury testimony to explore this discrepancy.

{¶ 29} In his sixth argument, Gillispie claimed he needed Moore's grand-jury testimony to establish that Moore had spoken to one of the victims during her review of a photo spread. At a post-indictment suppression hearing, Moore recalled watching as the victim selected Gillispie's picture and identified him as the perpetrator after narrowing her choice between a couple of photographs. In his grand-jury testimony, Moore acknowledged that he actually spoke to the victim while she was reviewing the photographs, asking her whether anyone in the array looked like the perpetrator. We are unaware of anywhere else in the record where Moore acknowledged speaking to the victim during her identification. The trial court did not abuse its discretion in finding a particularized need for this portion of the transcript.

{¶ 30} As part of the same argument, Gillispie also sought to use Moore's grand-jury testimony to establish his knowledge that Gillispie's picture did not match the victims' description of the perpetrator. In particular, Moore told the grand jury that the victims had

described the perpetrator as having brown hair with a reddish tint. Moore then explained to the grand jurors that the picture in the photo array made it appear as if Gillispie had "darker brown" hair, whereas it actually had "a brown red tint." In the subsequent criminal proceedings, Moore testified that Gillispie's photograph did match the description provided by the victims. We are unaware of any source other than the grand-jury transcript where Moore seemingly acknowledged that the photograph did not accurately depict the perpetrator's hair color as reported by the victims. The trial court again did not abuse its discretion in finding a particularized need for this portion of Moore's grand jury transcript.

{¶ 31} In his final argument below, Gillispie asserted that he needed Moore's grand-jury testimony regarding interactions that culminated in an interview at the police department. Specifically, Gillispie claimed that Moore would not tell him why the detective wanted to interview him or what the investigation concerned, even during the interview itself. According to Gillispie, this lack of disclosure was inconsistent with what Moore told the grand jury. Having reviewed the grand-jury transcript, however, we see no conflict. Moore's grand-jury testimony is consistent with Gillispie's claim that the detective refused to tell him what the investigation concerned prior to the interview. In addition, the detective's grand-jury testimony makes clear that the detective had no reason to disclose the topic during the interview because Gillispie had obtained that information from his attorney prior to the interview. The only specific conflict Gillispie cited below involved whether Moore had listed potential charges on a *Miranda* form before or after Gillispie signed it. But that issue was not addressed in Moore's grand-jury testimony. Therefore, Gillispie failed to demonstrate a particularized need for the portion of Moore's grand-jury transcript recounting his interaction with Gillispie.

{¶ 32} Turning now to the grand-jury testimony of the rape victims, Gillispie argued below that their testimony was necessary to refresh their recollection. In a preliminary ruling, the trial court found a particularized need for the victims' testimony because during their federal-court depositions they could not recall "some details of events which happened almost 30 years ago." (March 16, 2020 Entry at 2.) The trial court cited one victim's inability to recall whether she had been asked to go to the police department to view a photo spread. During her deposition in federal court, a second victim failed to recall whether she told Moore she was 90 percent sure of her identification or whether he told her she needed to be 100 percent sure. This victim also could not recall whether Moore told her Gillispie had changed his appearance before she testified in court. Finally, the trial court noted the third victim's inability to remember Moore asking her how confident she was in her photo identification. (*Id.*) Given that Gillispie's federal lawsuit included allegations of Moore manipulating witnesses, the trial court found a particularized need to refresh the victims' recollection with their grand-jury testimony. (*Id.*) The trial court later reiterated its ruling in the judgment from which the appellants have appealed. (March 25, 2021 Decision, Entry, and Order at 7.)

{¶ 33} Upon review, we see no need to refresh the first victim's recollection about whether she was asked to go to the police department to view a photo spread. Throughout the criminal proceedings and in their depositions, Moore and this victim consistently agreed that the detective brought the photo array to her home, where she made a positive identification. Without citing the record, Gillispie contends it is "undisputed" that this victim also viewed pictures at the police department. We are unaware of anything in the record, however, establishing that this victim ever viewed a photo spread at the police

department. In the criminal proceedings, the victim explained that she went to the police department to help create a composite drawing of the perpetrator. At times, she referred to this composite drawing as a "picture." But the only photo array she saw was the one presented at her own home. Regardless of whether this victim was asked to go to the police department to view a photo array, she never went.[2] Therefore, we see no particularized need for this aspect of the victim's grand-jury testimony.

{¶ 34} We note too that the second victim did not testify about being 90 percent or 100 percent sure during her grand-jury testimony. She did testify during the criminal trial about telling Moore she was 90 percent sure of her identification and about him telling her to be 100 percent sure. Furthermore, a grand-jury transcript could not refresh her recollection regarding something Moore later told her about Gillispie changing his appearance prior to trial. This alleged statement occurred after the victim's grand-jury testimony, which did not reference any changed appearance.

{¶ 35} Finally, the third victim provided no grand-jury testimony about her level of confidence regarding her photo identification. Therefore, the testimony could not be used to refresh her recollection on that issue. In short, despite having the benefit of examining the victims' grand-jury testimony, neither Gillispie nor the trial court identified any

---

[2] The appellants contend this victim's grand-jury testimony does not address whether she was asked to view a photo spread at the police department. Despite our diligent review of the voluminous record, we have been unable to locate this particular victim's grand-jury transcript. Nevertheless, the record is devoid of evidence that this victim ever went to the police department to view actual photographs. The evidence is all to the contrary. On appeal, Gillispie cites nothing from her grand-jury transcript establishing how it would refresh her recollection on the issue, and the State maintains that the issue never came up in this victim's grand-jury testimony. Under these circumstances, we are confident in finding no particularized need for the grand-jury testimony even though we have been unable to locate it.

particular way to use the testimony to refresh the victims' recollection about any issue. Under these circumstances, the trial court abused its discretion in finding a particularized need to use the victims' grand-jury testimony for refreshment purposes.

{¶ 36} In his post-hearing brief below, which was filed after his counsel had an opportunity to review the grand-jury testimony, Gillispie also identified two specific instances where a victim's grand-jury testimony conflicted with her later statements. In grand-jury testimony, one victim recalled spending about an hour with the perpetrator. This victim testified months later that she had been with the perpetrator for about one and a half hours. Gillispie claimed this contradiction corroborated an expert's opinion that victims often over-estimate the time they spent with a perpetrator. The State noted, however, that the same victim's original police statement indicated that her encounter with the perpetrator lasted an hour and a half. Because Gillispie can establish the contradiction without the grand-jury testimony, we see no particularized need for it.

{¶ 37} Gillispie next asserted that another victim's testimony shifted over time regarding the perpetrator's hair color. This victim originally told investigators the perpetrator had "brownish red hair." In subsequent grand-jury testimony, the same victim described the perpetrator's hair color as "brown." In a December 1990 suppression hearing, this victim again described the perpetrator's hair color being "all one color or medium brown." Later, in February 1991, she identified his hair color at different times as "thin brownish hair" and "brownish thin hair with a reddish tint to it." In June 1991, this witness described the perpetrator's hair as simply "brown."

{¶ 38} Gillispie maintained that his hair lacked any redness and that Moore's influence on the victim caused her to change her testimony from initially describing his

hair as "brownish red" to "brown." Gillispie also noted that Moore spoke to this victim prior to a post-indictment suppression hearing and told her that Gillispie had changed his hair color. According to Gillispie, this evidence suggested that Moore had influenced the victim's identification testimony and caused it to align with his true appearance.

{¶ 39} Upon review, we see no particularized need for the victim's grand-jury testimony about the perpetrator having "brown" hair. Gillispie contends he had brown hair with some gray in it, that the victim's initial description of brownish *red* hair was inaccurate, and that Moore was aware of this inaccuracy and caused the victim to change her testimony. We note, however, that Gillispie's suggestion about Moore influencing the victim to change her description of the perpetrator's hair over time is undermined by the victim alternately describing the perpetrator's hair color at various times as "brown," "medium brown," "thinish brown," and "brownish" with a "reddish tint." In any event, as for this victim's testimony before the grand jury about the perpetrator having "brown" hair, she provided the same in information during the suppression hearing and at trial. To the extent that there is a distinction to be made between the perpetrator having "brown" hair, as opposed to "brownish red hair" or "brownish thin hair with a reddish tint to it," Gillispie can make his point without the grand-jury testimony.

## IV. Two Additional Considerations

{¶ 40} In finding no abuse of discretion in the disclosure of *limited portions* of detective Moore's grand-jury transcript, we express no firm opinion on the relevance of those excerpts to Gillispie's pending federal lawsuit. For present purpose, we hold only that Gillispie made a sufficient threshold showing of particularized need to justify making the excerpts available in his section 1983 action. His demonstrated need outweighs the

residual need to maintain secrecy given the passage of time and the termination of his prosecution. In light of its familiarity with Gillispie's pending lawsuit, the federal district court is better positioned than this court to assess the ultimate relevance of the transcript excerpts in the context of his section 1983 claims. We conclude only that those excerpts must be made available to him.

{¶ 41} Finally, we recognize that witnesses enjoy absolute immunity from liability under 42 U.S.C. 1983 based on their grand-jury testimony. As we observed in *In re January 27, 2017 Order Releasing Grand Jury Materials*, 2018-Ohio-988, 108 N.E.3d 1170 (2d Dist.):

For purposes of federal law, a "grand jury witness has absolute immunity from any * * * claim [under 42 U.S.C. 1983] based on the witness'[s] testimony," and this "rule may not be circumvented by [way of a] claim[ ] that a grand jury witness conspired to present false testimony or by us[e] [of] evidence of [a] witness'[s] testimony to support any other [42 U.S.C.] 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg v. Paulk*, 566 U.S. 356, 369, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012). Immunity applies "to *all* grand-jury witnesses, even law-enforcement officers who have 'conspired to present false testimony.' " (Emphasis in original.) *King v. Harwood*, 852 F.3d 568, 584 (6th Cir.2017), quoting *Rehberg*, 566 U.S. at 369, 132 S.Ct. 1497.

*Id.* at ¶ 8.

{¶ 42} Although section 1983 liability cannot be predicated on what a witness told a grand jury, testimony before a grand jury may be used for other purposes, such as to

attack a witness's credibility through impeachment. *Marshall v. Randall*, 719 F.3d 113, 116-117 (2d Cir.2013). On appeal, the parties have not addressed the potential applicability of the rule in *Rehberg*, and we express no opinion on it. We leave the issue for the federal district court to address if it arises in the context of Gillispie's pending lawsuit. We have proceeded herein on the basis that Gillispie seeks to use the grand-jury testimony for permissible purposes, not as substantive evidence underlying his section 1983 claims.

### V. Conclusion

**{¶ 43}** Based on the reasoning set forth above, the appellants' assignments of error are sustained in part and overruled in part. The assignments of error are sustained insofar as the trial court erred in ordering full disclosure and production of the grand-jury testimony of all four witnesses "without exception or limitation." The assignments of error are overruled, however, insofar as the appellants contend the trial court abused its discretion in ordering disclosure and production of any grand-jury testimony.

**{¶ 44}** Gillispie is entitled to disclosure and production of the portions of detective Moore's grand-jury testimony addressing: (1) the timing of his involvement with the rape investigation (May or June 1990); (2) his interaction with Richard Wolfe regarding employee identification cards and a composite sketch; (3) his possession of campground receipts related to an alibi defense; and (4) his comments to one of the victims during her review of a photo array and his statement seemingly acknowledging that Gillispie's photograph did not precisely match the perpetrator's hair color as reported by the victims. The foregoing testimony is found on pages 3, 5, 6, 24, and 29 of Moore's grand-jury testimony transcript. Disclosure and production of the above-referenced portions of the

grand-jury testimony shall be limited to the parties and counsel solely for use in Gillispie's pending federal lawsuit.[3]

{¶ 45} Gillispie failed to demonstrate his entitlement to the production or disclosure of any other grand-jury testimony. The trial court acted unreasonably, and therefore abused its discretion, in finding otherwise. The judgment of the Montgomery County Common Pleas Court is affirmed in part and reversed in part, and the previously-ordered stay is lifted.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Frank H. Scialdone
Cara M. Wright
Edward J. Dowd
Dawn M. Frick
Christopher T. Herman
Michele L. Berry
David B. Owens
Hon. Steven K. Dankof

---

[3] The trial court noted that Gillispie also had a civil lawsuit pending in Montgomery County Common Pleas Court. It declined to address the relevance of the grand-jury transcripts to that lawsuit in part because Gillispie had not briefed the issue. (March 25, 2021 Decision, Entry, and Order at footnote 5.) For present purposes, we express no opinion about Gillispie's need for grand-jury transcripts in connection with his state-court lawsuit.