[Cite as *State v. Ramsey*, 2023-Ohio-807.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111555 |
| v. | : | |
| JASON L. RAMSEY, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-643258-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory M. Paul, Assistant Prosecuting Attorney, *for appellee.*

Paul B. Daiker, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Jason L. Ramsey ("Ramsey") appeals his convictions. For the following reasons, we affirm.

**Factual History**

{¶ 2} On September 13, 2019, in Cuyahoga C.P. No. CR-19-643258, a Cuyahoga County Grand Jury indicted Ramsey on Count 1, tampering with evidence in violation of R.C. 2921.12(A)(1); Count 2, gross sexual imposition against A.E. in violation of R.C. 2907.05(A)(1); Counts 3 and 7, disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1); Count 4, voyeurism in violation of R.C. 2907.8(D); Counts 5 and 8, public indecency in violation of R.C. 2907.09(B)(1); and Count 6, gross sexual imposition against B.E. in violation of R.C. 2907.05(A)(1). The charges for Counts 3, 5, 6, 7, and 8 were dismissed and, therefore, we will not detail any facts or testimony relating to those charges. Counts 1, 2, and 4 relate to several alleged incidents between Ramsey and A.E. — the daughter of Ramsey's girlfriend, L.S. — that occurred in November 2012, October through November 2018, and May 2019. At all relevant times, Ramsey lived with L.S.; her twin daughters A.E. and B.E. (d.o.b. 11/13/1995); Ramsey's son, Ja.R. (d.o.b. 6/20/2001); and Ramsey and L.S.'s son, J.R. (d.o.b. 2/20/2015).

**I. Count 1, tampering with evidence, and Count 4, voyeurism**

{¶ 3} Counts 1 and 4 stem from inappropriate photographs L.S. found on Ramsey's iPad on May 24, 2019. That morning, L.S. and Ramsey met, and one of the topics they discussed was their relationship. L.S. testified that they agreed their relationship was not going well, but she expected Ramsey to return to L.S.'s home that evening after he met coworkers after work. Ramsey testified that when he and L.S. saw each other that morning, he ended their relationship against L.S.'s wishes.

{¶ 4} Later in the evening on May 24, L.S. was informed by her sister, H.S., that Ramsey was at the Medina Panini's with another woman. L.S. stated she looked on Ramsey's iPad, specifically at his personal emails with photo attachments, in search of evidence of the affair. L.S. testified that she found over 600 inappropriate photographs of A.E., B.E., Ramsey's coworkers, and other girls that dated back for years. L.S. had access to the iPad throughout the pendency of her relationship with Ramsey, but she never had cause to search Ramsey's email account or photographs prior to May 2019.

{¶ 5} L.S. and H.S. went to Panini's where they found Ramsey alone with another woman. L.S. testified that she told Ramsey not to return home that evening and told the woman that if she had children, she should be cautious because Ramsey had taken inappropriate photographs of her girls. Ramsey denied that L.S. told him at Panini's that she found inappropriate pictures on his iPad. Ramsey testified that L.S. told him not to return home that evening and she planned to ruin his life and prevent him from seeing J.R.; L.S. denied making those comments.

{¶ 6} When L.S. returned home from Panini's, she told A.E. about the inappropriate photographs; A.E. did not want to hear any details or see the photographs. That night, L.S. attempted to secure copies of the photographs from Ramsey's iPad. L.S. accessed Ramsey's email account on the iPad and forwarded emails with attached photos to her personal email account. As she forwarded several emails, L.S. noticed the emails were not transferring and that Ramsey's emails were being sent to "trash." L.S. testified that she believed Ramsey received email

notifications that she was forwarding emails from his account, and he deleted the emails to avoid transfer of them to L.S.'s personal email account. Ramsey denied receiving any notifications that his emails were being forwarded to L.S.'s email account and denied moving his emails into "trash." At approximately 1:00 a.m. on May 25, 2019, L.S. successfully forwarded three emails with attached photos that were marked as state exhibit Nos. 1, 2, and 3.

{¶ 7} State exhibit Nos. 1 and 2 were upskirt photos. State exhibit No. 1 was an email originally sent from Ramsey's Yahoo email account to his iCloud account on November 18, 2018. Based upon the dress, hair, and familiar surroundings shown in state exhibit No. 1, L.S. and A.E. both testified the upskirt photo depicted A.E. Similarly, state exhibit No. 2 was an email forwarded from Ramsey's Yahoo email account to his iCloud account on October 9, 2018. L.S. and A.E. recognized A.E.'s dress in state exhibit No. 2, and A.E. testified it was her buttocks shown in the photograph. [1]

{¶ 8} Ramsey testified that he had hundreds of photos on his iPad that he initially took with his phone or camera and then sent to his email and iCloud accounts. Ramsey testified that no one had access to his phone except himself. Ramsey further testified that L.S. had access to his iPad, but he was not sure if she had access when state exhibit Nos. 1 and 2 were taken and emailed to his account. Ramsey acknowledged that the addresses on state exhibit Nos. 1, 2, and 3 were his

---

[1] State exhibit No. 3 was a picture of an outdoor buffet table and two individuals and was emailed by Ramsey to his iCloud account on May 17, 2019. The photo did not depict A.E.

email and iCloud addresses, but denied he took the photographs depicted in state exhibit Nos. 1 and 2 and denied he sent those photographs to his accounts. Ramsey could not explain why state exhibit Nos. 1 and 2 appeared on his iPad. Ramsey further denied that his iPad contained inappropriate photos and stated L.S. lied when she made that statement. Ramsey acknowledged that state exhibit No. 1 showed an upskirt picture of A.E.

{¶ 9} L.S. testified that on Saturday, May 25, 2019, the morning after the confrontation at Panini's, she met Ramsey and verbalized how upset she was about the photographs of the twins. According to L.S., Ramsey stated he did not know why he took the photographs. Ramsey and L.S. agreed Ramsey would retrieve his remaining personal items from L.S.'s home that day. Ramsey stated he spent only 45 minutes at L.S.'s home while L.S. stated Ramsey was at her home for hours and left around 2:30 p.m.

{¶ 10} While at L.S.'s home, Ramsey asked for his iPad and became angry when he was told it was not available. At 2:53 p.m., Ramsey reset the iPad to the original factory settings and, as a result, the photographs and Ramsey's email and iCloud accounts were no longer accessible. Ramsey testified that he remotely reset the iPad to prevent anyone from accessing his credit card and bank account information contained on the iPad. Ramsey denied resetting the iPad to prevent access to any photographs. Ramsey further denied he had any reason to believe at that time that a criminal investigation would ensue.

{¶ 11} Detective Carl Hartman ("Detective Hartman"), one of the investigating officers, testified that there was no police involvement on May 25, 2019, when Ramsey's iPad was reset to factory settings. Detective Hartman testified that resetting the iPad was considered suspicious behavior by the police.

{¶ 12} Detective Richard Johnson ("Detective Johnson") testified that he is a digital forensics examiner who acquires and processes digital forensics data and creates forensics reports for criminal investigations. Detective Johnson stated he analyzed Ramsey's iPad and determined the device was reset to factory settings at approximately 2:53 p.m. on May 25, 2019. Detective Johnson testified that a factory reset is not the same as simply deleting data from a device and once a factory reset occurs, the device's data is no longer accessible.

{¶ 13} Ja.R. testified that his father, Ramsey, had an iPad, but Ja.R. did not have access to it. Ja.R. testified that the email address shown on state exhibit Nos. 1, 2, and 3 belonged to Ramsey, and Ja.R. had emailed his dad at that address. Ja.R. further testified that even though Ramsey had "sexually deviant, perverse photos of young girls" on his iPad, Ja.R. did not believe his father could have committed the alleged crimes.

## II. Count 2, gross sexual imposition

{¶ 14} Count 2, gross sexual imposition against A.E., stems from an alleged incident in November 2012.[2]

---

[2] Ramsey argued that the gross sexual imposition occurred after A.E.'s 18th birthday — November 13, 2013 — and, therefore, the charge should have been classified as a misdemeanor rather than a felony offense. Ramsey further argued that pursuant to

{¶ 15} A.E. testified that in November 2012, L.S., Ramsey, L.S. and Ramsey's children, and Ramsey's parents traveled to Louisiana for Thanksgiving. L.S. and A.E. testified that upon returning from Louisiana the week of November 25, 2012, L.S. and Ramsey held a party at their home to celebrate the holiday and the birthdays of the twins and L.S.'s father. Ramsey and his mother, Hemperley, denied a birthday celebration occurred at the house in November 2012, and Hemperley stated there was a birthday celebration in November 2013.

{¶ 16} A.E. testified that during the party, Ramsey asked her for help transferring information to his iPad. A.E. stated that she and Ramsey went upstairs to the computer room and closed the door; Ramsey sat at the desk; and A.E. stood next to him. A.E. testified that as she reached across the desk for the mouse, Ramsey dragged his right hand slowly up the back of her leg, moving her dress in the process, and caressed her inner thigh and then stroked her vagina. A.E. testified that the encounter lasted for two minutes during which time she was scared and

R.C. 2901.13(A)(1)(b), the misdemeanor gross sexual imposition offense should have been barred by the two-year statute of limitations. However, A.E. consistently stated that the gross sexual imposition occurred in November 2012, as evidenced by her May 26, 2019 police interview, May 27, 2019 written police statement, June 2019 police interview, and trial testimony. A.E. further testified that she did not discuss the date of the incident with her mom, L.S., before A.E. spoke with the police on May 26, 2019. A.E. stated that she did not remember L.S. telling the police on May 26, 2019, that A.E.'s encounter with Ramsey happened in either 2012 or 2013. L.S. denied that prior to the police interview on May 26, 2019, she spoke with A.E. about the specific date the alleged inappropriate behavior occurred. Yet, L.S. could not explain why the body-cam video from the May 26, 2019 police investigation showed L.S. stating that an incident between A.E. and Ramsey occurred in either November 2012 or November 2013. Patrolman Andrew Vance ("Vance"), who interviewed A.E. on May 26, 2019, testified that the body-cam video showed L.S. stating that "the best we can tell" the events occurred in 2012 or 2013. Ramsey denied any inappropriate behavior occurred, but stated he once worked with A.E. in the home computer room in November 2013.

uncomfortable. A.E. stated she did not feel as if she could leave the computer room. A.E. stated that she asked Ramsey what he was doing, and Ramsey did not respond. A.E. testified that she told Ramsey to stop, which he did. A.E. testified that she then heard someone coming up the stairs, so she opened the door, saw her grandfather in the hallway heading for the bathroom, and she returned downstairs. A.E. testified that she was in a state of shock and did not tell anyone that evening or at any other time what had happened. A.E. stated she was worried her mom might not believe her if she told her about the incident.

{¶ 17} In support of A.E.'s story, L.S. testified that house guests in November 2012 regularly used the upstairs bathroom and it was not unusual for L.S.'s father to use the upstairs bathroom. Ramsey, Ja.R., and Hemperley testified that guests, particularly L.S.'s father, would typically use the basement bathroom.

{¶ 18} Further, Ramsey denied that he touched A.E. inappropriately. Ramsey testified that there was a day when he was in the home computer room with A.E., and A.E. helped him transfer iTunes to his iPod. Ramsey testified that he was certain that incident occurred in 2013 and not 2012 because the bedroom was not converted to a computer room until 2013.

{¶ 19} Ja.R. and Hemperley testified on Ramsey's behalf. Ja.R., Ramsey's son, testified that the upstairs bedroom was not converted to a computer room until the end of 2013. Ja.R. further testified that the allegations against Ramsey were absurd. He testified that he never observed inappropriate behavior between Ramsey and A.E., and he never observed A.E. being afraid or uncomfortable around Ramsey.

{¶ 20} Hemperley, Ramsey's mother, testified that she had a very close relationship with A.E., and A.E. would have confided in her if Ramsey had acted inappropriately with her. Hemperley further testified that A.E. never told her of any such behavior, and she never complained to her about Ramsey. Hemperley testified that she does not believe Ramsey would have inappropriately touched A.E. Hemperley also testified that L.S. and the twins "did not get along," but the twins had a "very good relationship with [Ramsey]."

{¶ 21} No family member observed any inappropriate behavior between Ramsey and A.E., and A.E. never told anyone, including her twin sister or her aunt H.S., who was married to a police officer, that any such behavior occurred. A.E. conceded she did not give any outward indication after the November 2012 incident that she feared Ramsey or that she had negative feelings towards him. A.E. testified that a few months following the November 2012 incident, she went alone to the movie theater with Ramsey to watch the Iron Man trilogy. A.E. testified that she was not afraid to return to L.S.'s home, where Ramsey resided, in 2018 after A.E. graduated from college. A.E. also testified that in 2018 she could not afford to live on her own and her father did not have enough room for her to live with him. A.E. reviewed numerous family photographs marked as exhibits that depicted her with Ramsey and the rest of the family and in which A.E. appeared happy. A.E. stated that she acted outwardly happy because that was what her mom would have wanted. A.E. further stated that she never forgot the November 2012 incident with Ramsey,

and she has undergone therapy since May of 2019 due to Ramsey's behavior. A.E. denied that her family members told her what to say at court.

{¶ 22} Trial testimony was also provided by the investigating officers. At L.S.'s home on the evening of Sunday, May 26, 2019, Patrolman Vance and Sergeant Saxer ("Saxer") interviewed A.E. in the presence of L.S. and H.S. Patrolman Vance testified that during the interview A.E. was "visibly upset, crying, shaky" and she described an incident in November 2012 that occurred in the home computer room. A.E. did not inform Patrolman Vance that the incident happened during a birthday celebration for her grandfather or when the house was full of people present for a party.

{¶ 23} After meeting with Patrolman Vance and Saxer, A.E. prepared a written statement. The written statement detailed the November 2012 incident with Ramsey. A.E. could not explain why her written police statement that was provided on May 27, 2019 — almost three years closer to the alleged incidents — varied from her trial testimony. A.E.'s written statement stated she went upstairs to use the computer room and Ramsey subsequently entered the room. In her trial testimony, A.E. stated that Ramsey asked her to go upstairs and help him on the computer. The written statement also did not indicate Ramsey used his right hand to touch A.E., nor did it state the incident lasted for approximately two minutes.

{¶ 24} Detective Hartman conducted an in-person interview of A.E. on June 20, 2019. A.E.'s June 2019 statement was consistent with her trial testimony regarding the alleged sexual misconduct. Detective Hartman also testified that in

his experience with children and sexual assault cases, the victim's testimony is "very vague."

**Procedural History**

{¶ 25} On September 27, 2021, Ramsey pleaded not guilty to the indictment. On January 6, 2020, Ramsey filed a motion for a more specific bill of particulars to which the plaintiff-appellee state of Ohio responded on March 2, 2020. On March 4, 2020, Ramsey filed a motion to dismiss Counts 3, 4, 5, 7, and 8 based upon the expiration of the statute of limitations. On May 13, 2020, Ramsey filed a notice of alibi. On June 8, 2021, the trial court dismissed Counts 5 and 8, public indecency, and denied Ramsey's motion to dismiss Counts 3, 4, and 7.

{¶ 26} On September 19, 2021, Ramsey filed a second notice of alibi regarding Count 2, and on September 21, 2021, Ramsey filed a supplement to his first and second notices of alibi.

{¶ 27} On March 25, 2022, Ramsey filed a motion to disclose grand jury transcripts. On April 4, 2022, the state filed a motion to amend the indictment on Counts 2, 4, and 6 pursuant to Crim.R. 7. Following the trial court's in camera review of the grand jury transcripts, it denied Ramsey's motion to disclose grand jury transcripts on April 5, 2022. On April 6, 2022, Ramsey filed a brief in opposition to the state's motion to amend the indictment. On April 11, 2022, the trial court granted the state's motion to amend the indictment on Counts 2 and 6 and held its decision on Count 4 in abeyance. On that same day, Ramsey voluntarily waived his right to a jury trial, and the court commenced a bench trial.

{¶ 28} The state called L.S., A.E., B.E., Detective Johnson, Patrolman Vance, and Detective Hartman, and the defense presented testimony from Ramsey, Ja.R., and Hemperley.

{¶ 29} Following the state's case-in-chief, Ramsey made an oral Crim.R. 29 motion on all counts. The trial court granted Ramsey's motion as to Count 6, gross sexual imposition against B.E., and dismissed that count. At the same time, the trial court granted the state's motion to amend the indictment on Count 4, voyeurism, to change the date of offense from November 1, 2012, to October 9, 2018, through November 19, 2018, the dates contained on state exhibit Nos. 1 and 2.

{¶ 30} On April 22, 2022, the trial court rendered a verdict that found Ramsey guilty of Count 1, tampering with the evidence, a felony of the third degree; Count 2, gross sexual imposition, a felony of the fourth degree; and Count 4, voyeurism, a misdemeanor of the first degree. The court found Ramsey not guilty of Counts 3 and 7, disseminating matter harmful to juveniles. Counts 5, 6, and 8, had been previously dismissed.

{¶ 31} On May 25, 2022, the court sentenced Ramsey to 12 months on both Counts 1 and 2 and 180 days on Count 4, with all sentences to run concurrently for a total sentence of 12 months. Ramsey received credit for one day of jail-time served. The trial court instructed Ramsey on his Tier I sex offender/child offender status and postrelease control.

{¶ 32} On May 26, 2022, Ramsey filed a timely notice of appeal, presenting these assignments of error, verbatim, for our review:

Assignment of error one: The trial court committed reversible error when it denied the appellant's motion to disclose grand jury testimony.

Assignment of error two: The trial court committed reversible error when it granted the State of Ohio's motion to amend the indictment pursuant to Crim.R. 7, particularly with regard to Count Four.

Assignment of error three: The trial court committed reversible error when it denied the appellant's renewed motion to disclose grand jury testimony in light of the State of Ohio's motion to amend the indictment which significantly changed the dates of the indictment with regard to Count Four, which alleged voyeurism.

Assignment of error four: The trial court's finding of guilt with regard to Counts Two, Four, and Five are not supported by evidence sufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Assignment of error five: The trial court erred when it denied Appellant's motion for Judgment of Acquittal pursuant to Criminal Rule 29.

Assignment of error six: The trial court erred when it denied Appellant's Renewed motion for Judgment of Acquittal pursuant to Criminal Rule 29.

Assignment of error seven: The trial court violated Appellant's rights to due process and a fair trial by entering a judgment of convictions against the manifest weight of the evidence.

**Legal Analysis**

**Amended Indictment**

{¶ 33} For ease of discussion, we will address Ramsey's assignments of error out of order.

{¶ 34} In his second assignment of error, Ramsey argues that the trial court erred when it allowed the state to amend the date of the indictment relating to Count 4, voyeurism, from November 1, 2012, to October 9, 2018, through November 19,

2018. Specifically, Ramsey argues that the evidence presented to the grand jury that resulted in an indictment on Count 4 for events that allegedly occurred on November 1, 2012, could not have been the same evidence the state planned to introduce at trial to prove Ramsey's guilt of Count 4, voyeurism, on October 9, 2018, through November 19, 2018.

{¶ 35} Pursuant to Crim.R. 7(D), a trial court may amend an indictment "at any time before, during or after a trial" if "no change is made in the name or identity of the crime charged." The amendment may be to change "any defect, imperfection, or omission in form or substance, or of any variance with the evidence." Crim.R. 7(D).

{¶ 36} On April 4, 2022, one week before the scheduled trial date, the state filed a motion to amend the indictment dates for Counts 2, 4, and 6. On April 11, 2022, the trial court, in open court, granted the state's motion to amend the indictment on Counts 2 and 6 and held its ruling on Count 4 in abeyance until further evidence was introduced on that offense. Ramsey's second assignment of error addresses only Count 4, and therefore, we will not include Counts 2 and 6 in our analysis.

{¶ 37} The original indictment stated Count 4, voyeurism, occurred on or about November 1, 2012. Following the state's case-in-chief, including the introduction of state exhibit Nos. 1 and 2, the trial court granted the state's motion to amend the date of Count 4 to October 9, 2018, through November 19, 2018. The trial testimony and exhibits pertaining to the voyeurism charges showed that

inappropriate photos of A.E. were found on Ramsey's iPad. Those photos, marked as state exhibit Nos. 1 and 2, were sent from Ramsey's personal email account to his iCloud account on October 9, 2018, and November 18, 2018, respectively.[3] As permitted under Crim.R. 7(D), Count 4 of the amendment was amended at trial to allege the offense of voyeurism occurred on or about the dates the photographs were sent by Ramsey via email; following the amendment, the indictment dates conformed with the trial evidence. Upon the amendment of the indictment dates, the state met its responsibility that was to "present proof of offenses alleged in the indictment, reasonably within the time frame alleged." *State v. Shafer*, 8th Dist. Cuyahoga No. 79758, 2002-Ohio-6632, ¶ 17, citing *State v. Daniel*, 97 Ohio App.3d 548, 647 N.E.2d 174 (10th Dist. 1994).

{¶ 38} A reviewing court should not disturb a trial court's decision to amend an indictment absent an abuse of discretion and a showing of prejudice to the defense. *State v. Moore*, 8th Dist. Cuyahoga No. 103123, 2016-Ohio-2836, ¶ 29. The record shows the amendment of the dates on Count 4 neither changed the name or identity of the offense, as prohibited under Crim.R. 7, nor prejudiced Ramsey. The original indictment charged that on or about November 1, 2012, Ramsey "secretly or surreptitiously [did] videotape, photograph, film, or otherwise record A.E. under or through the clothing worn by her, for the purpose of viewing A.E.'s

---

[3] The amended indictment dates and the dates Ramsey allegedly sent his voyeuristic emails are not identical. Ramsey's emails that were the subject of Count 4, voyeurism, were allegedly sent to his iCloud account on October 9, 2018, and November 18, 2018, while the state amended the indictment to allege the acts of voyeurism occurred between October 9, 2018 and November 19, 2018.

body or undergarments." The dates of the act were not elements of the offense. Further, Ramsey's own testimony established lack of prejudice where his defense strategy was to deny he took the photographs, and the date of the incident would have no bearing on that defense. *See State v. Coles*, 8th Dist. Cuyahoga No. 90330, 2008-Ohio-5129 (appellant-defendant not prejudiced by amended indictment dates because defense strategy was to deny he engaged in alleged behavior, regardless of the date of the offense.).

{¶ 39} Ramsey's reliance on *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994), is misguided. In *Vitale*, a unique situation arose where the defendant was indicted on one theft offense but, following an amendment of the indictment date to a range of dates, was convicted on a separate theft act that occurred on a different date, at a different place than the original theft, and based upon a separate set of facts. Thus, Vitale's conviction was reversed. The trial testimony in the instant matter indicated state exhibit Nos. 1 and 2, the photographs presented to support the voyeurism charges, were initially found by L.S. in May 2019. The grand jury's indictment was filed on September 13, 2019. There was no basis to presume the evidence presented to the grand jury differed from that which was introduced at trial.

{¶ 40} For the foregoing reasons, Ramsey's second assignment of error is overruled.

**Disclosure of Grand Jury Transcripts**

{¶ 41} We will address Ramsey's first and third assignments of error collectively.

{¶ 42} In his first assignment of error, Ramsey argues that he established a particularized need for disclosure of the grand jury transcripts because without those transcripts it was unknown whether the grand jury relied upon the same evidence against Ramsey when it returned the indictment as the evidence the state intended to introduce at trial.

{¶ 43} In his third assignment of error, Ramsey incorporates the facts, law, and arguments contained in his first and second assignments of error and contends that the trial court committed reversible error when it denied his renewed motion to disclose the grand jury testimony. Ramsey presented the renewed motion after the trial court granted the state's motion to amend the indictment dates on Counts 2 and 6 and held in abeyance its ruling on amending the alleged indictment date on Count 4. On the next day, which was the first day of trial, the trial court stated it had again reviewed the grand jury transcripts and denied Ramsey's renewed motion to disclose those transcripts.

{¶ 44} The appeal of a trial court's decision to disclose grand jury transcripts is reviewed for an abuse of discretion. *State v. Coley*, 93 Ohio St.3d 253, 261, 754 N.E.2d 1129 (2001), citing *State v. Brown*, 38 Ohio St.3d 305, 308, 528 N.E.2d 523 (1988).

{¶ 45} Grand jury proceedings are generally secretive in nature. There is no right to inspect the related grand jury transcripts unless there is a showing of a particularized need for disclosure that outweighs the need for secrecy. *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph two of the syllabus. A particularized need exists when consideration of the surrounding circumstances shows "it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Id.* at paragraph three of the syllabus. The determination of whether a particularized need exists is a question of fact. *Id.*

{¶ 46} Ramsey argued the grand jury transcripts would confirm or refute that the grand jury relied on the same evidence at the time it issued the indictment as the evidence the trier of fact would receive at trial. However, the state's filing of a motion to amend the indictment dates did not, in and of itself, establish that the evidence presented to the grand jury had to be erroneous or different from that intended to be introduced at trial. In fact, an indictment that states the accused committed a specific offense is generally sufficient. *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985); R.C. 2914.05. Where exact times and dates are not essential elements of offenses, "the failure to provide dates and times in [the] indictment will not alone provide a basis for dismissal of the charges." *Sellards* at 171.

{¶ 47} Ramsey makes no plausible argument as to why a change in the indictment dates created a particularized harm that, in turn, required disclosure of

the grand jury transcripts to ensure that Ramsey received a fair trial. Additionally, Ramsey does not cite to any relevant case law with facts similar to those presented here. We find no basis to interpret changes in the dates of the indictment — even a significant change as occurred with Count 4, voyeurism — created a particularized need to determine whether the evidence viewed by the grand jury was the same evidence to be introduced at trial.

{¶ 48} Further, the trial court's exparte, incamera inspection of the transcripts did not equate to an implicit finding that a particularized need existed. *State v. Perkins*, 191 Ohio App.3d 263, 2010-Ohio-5161, 945 N.E.2d 1083, ¶ 50 (2d Dist.) ("[T]he fact that the judge, with the agreement of the prosecutor and defense attorney, reviewed the transcript, in camera and ex parte, was not an implicit ruling by the court that there was a 'particularized need.'"). Absent a finding of a particularized need, the court was not required to provide a copy of the grand jury testimony to counsel. However, since the trial court examined the grand jury testimony and made the testimony part of the record, we have reviewed the grand jury testimony and find no error in the trial court's denial of Ramsey's motion to disclose the grand jury testimony.

{¶ 49} The trial court did not abuse its discretion when it found there was no particularized need to inspect the grand jury testimony and, thus, Ramsey's first and third assignments of error are overruled.

**Sufficiency of the Evidence**

{¶ 50} To avoid repetition, we will address Ramsey's fourth, fifth, and sixth assignments of error collectively.

{¶ 51} In Ramsey's fourth assignment of error, he argues there was insufficient evidence to support the trial court's finding of guilt on Counts 1, 2, and 4. In his fifth assignment of error, Ramsey argues that the trial court erred when it denied his initial Crim.R. 29 motion for judgment of acquittal made after the close of the state's case-in-chief, and in his sixth assignment of error, Ramsey argues that the trial court erred when it denied his renewed Crim.R. 29 motion presented at the close of his defense.

{¶ 52} Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the state has met its burden of production at trial is conducted. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist.

Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. A sufficiency of the evidence argument is not a factual determination, but a question of law. *Id.*

{¶ 53} Crim.R. 29(A) provides that a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 54} With respect to Count 1, tampering with the evidence, the state presented testimony that L.S. found hundreds of inappropriate photographs on Ramsey's iPad, including photos of A.E. L.S. testified that she confronted Ramsey on both May 24, 2019, and May 25, 2019, specifically about the inappropriate pictures of A.E. L.S. testified that only she and Ramsey had access to the iPad, and the iPad was in her possession on May 25, 2019. Detective Johnson testified that on May 25, 2019, Ramsey's iPad was reset to the original factory settings thereby permanently deleting all data, including photos. L.S. testified that after the iPad was reset to factory settings, she could no longer access the photos or Ramsey's email accounts. L.S. further testified that state exhibit Nos. 1 and 2 depicted A.E. and she found the photographs on Ramsey's iPad. Viewing this evidence in a light most favorable to the state, the trier of fact could have reasonably concluded at the close of the state's case that Ramsey reset the iPad to its factory settings to delete the

inappropriate photographs in the likelihood that a criminal investigation centered around those photos was likely to be instituted. Ramsey subsequently testified that he reset the iPad to the factory settings on May 25, 2019, after leaving L.S.'s company, although he claimed to have done so to protect his financial information contained on the device. Assuming the state's evidence was believed, there was sufficient evidence at the close of Ramsey's defense to support a conviction on Count 1, tampering with the evidence.

{¶ 55} With respect to Count 2, gross sexual imposition of A.E., A.E. recounted an incident in November 2012 when Ramsey touched her leg and vagina without her consent. A.E. stated she was scared during the incident and did not know if she could leave the room. Viewing this evidence in a light most favorable to the state, it was more than sufficient for the trier of fact to have concluded at the close of the state's case and at the close of Ramsey's defense that Ramsey had sexual contact with A.E., not his spouse, by purposely compelling such person to submit by force or threat of force.

{¶ 56} As to Count 4, voyeurism, the state introduced state exhibit Nos. 1 and 2 that depicted upskirt photos of A.E. The testimony stated the photos were found on Ramsey's iPad, to which only Ramsey and L.S. had access, and the photos were sent from Ramsey's personal email account to his iCloud account. Viewing this evidence in a light most favorable to the state, it is more than sufficient for the trier of fact to have found that Ramsey secretly took the photos for the purpose of viewing A.E.'s body or undergarments. Ramsey also testified that he was the only person

with access to his phone and he and L.S. were the only ones with access to the iPad, thereby supporting the state's position that Ramsey was responsible for the presence of the photos shown in state exhibit Nos. 1 and 2 on his iPad. Assuming the state's evidence was believed, there was sufficient evidence at the close of Ramsey's defense to support a conviction on Count 4, voyeurism.

{¶ 57} The above testimony supported the court's denial of Ramsey's initial Crim.R. 29 motion, renewed Crim.R. 29 motion, and the current insufficiency of the evidence claim. For these reasons, Ramsey's fourth, fifth, and sixth assignments of error are overruled.

**Manifest Weight of the Evidence**

{¶ 58} In his seventh assignment of error, Ramsey argues that the trial court violated his rights to due process and a fair trial when it entered judgment against the manifest weight of the evidence.

{¶ 59} A manifest weight challenge questions the credibility of the evidence presented and examines whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins* at 390. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio

App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*. Reversal of a trial court's "judgment on manifest weight of the evidence requires the unanimous concurrence of all three appellate judges." *State v. Crumbley*, 8th Dist. Cuyahoga No. 93202, 2010-Ohio-3866, ¶ 20, citing *Thompkins* at paragraph four of the syllabus.

{¶ 60} Following a thorough review of the record and for the reasons discussed above, we cannot conclude that this is the exceptional case in which the trier of fact lost its way. Additionally, as to Count 1, tampering with the evidence, Ramsey argues that he reset the iPad to prevent L.S. from having access to his financial information rather than to prevent access to the photographs contained on the iPad. Ramsey also argues he was not aware of any current or probable criminal investigation when he instituted the factory reset. While we note there was no police involvement when the factory reset occurred, Ramsey had reason to believe — based upon L.S.'s May 24, 2019 and May 25, 2019 comments to him regarding the inappropriate photos of A.E. and B.E. — that a criminal investigation regarding the photographs could occur.

{¶ 61} As to Count 2, gross sexual imposition, Ramsey argues that there was insufficient evidence to convict him on this charge. Specifically, Ramsey argues that A.E.'s testimony was not credible; her testimony was not corroborated by any witnesses; and there were "glaring errors" on A.E.'s recollection of the timing of events during the weekend of May 24, 2019, through May 26, 2019. Here, the trial court chose to believe A.E. and her recounting of the events that occurred in late November 2019. Further, the trial court stated at the time of the verdict that it found "the entirety of [Ramsey's] testimony not credible." "[T]he trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it." *State v. Matthews*, 8th Dist. Cuyahoga No. 97916, 2012-Ohio-5174, ¶ 34, citing *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Our review as the thirteenth juror also finds A.E.'s testimony credible.

{¶ 62} We recognize there were minor inconsistencies between A.E.'s May 27, 2019 written statement, her June 2019 verbal statement to the police, and her trial testimony. We do not find these inconsistencies discount the remainder of A.E.'s testimony. And we further note that A.E. always stated in her oral and written police statements in May 2019, and June 2019, as well as her trial testimony that the gross sexual imposition occurred in November 2012. While no one was able to corroborate A.E.'s version of these events, A.E. explained that she did not tell anyone because she was afraid her mom would not believe her. We do not find either A.E.'s decision not to share the events of the alleged encounter with family or the fact that no family member observed a change in A.E.'s behavior following the November

2012 incident demonstrated that the gross sexual imposition did not occur. Additionally, while Ramsey introduced a plethora of family photos to demonstrate A.E. was happy, we do not find that compelling evidence. Further, we do not find the state's failure to introduce a photograph depicting the party in late November 2012, when the incident between A.E. and Ramsey allegedly occurred, shows the celebration never took place. Ramsey, Ja.R., and Hemperley attempted to discredit A.E.'s allegations of misconduct yet the trier of fact was not obligated to believe the testimony of all witnesses.

{¶ 63} Lastly, A.E., B.E., and L.S. testified that their emotional states the weekend of May 24, 2019, through May 26, 2019, impacted their ability to clearly recall the sequence of events. Any inconsistencies in their accounts of the May 24 through May 26 events did not necessarily wholly negate the plethora of other evidence presented that Ramsey committed gross sexual imposition against A.E.

{¶ 64} As to Count 4, voyeurism, Ramsey argues that he denied taking the photos shown in state exhibit Nos. 1 and 2 and the state provided no proof that the photos were taken by Ramsey. Circumstantial evidence was sufficient to sustain a conviction where the evidence convinced the trier of fact of Ramsey's guilt beyond a reasonable doubt. *See State v. O'Malley*, 8th Dist. Cuyahoga No. 109454, 2021-Ohio-2038, ¶ 25, quoting *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶ 65} Ramsey's convictions were not against the manifest weight of the evidence and, therefore, his seventh assignment of error is overruled.

{¶ 66} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

ANITA LASTER MAYS, A.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR